WISWALL & PRICE *vs.* McGOWN and others:

Although courts of equity have sometimes interfered in favor of parties who were not ready to perform their agreement at the day, where, in their opinion, the time specified in the contract for its fulfilment was not essential, yet when a further indulgence is granted it should only be in extreme cases, where a party has failed through some unforeseen accident; or where there is something indicating a waiver of the objection by the other party.

It is for the parties themselves to settle the terms of their agreement; and courts have no power to determine which of those terms are, and which are not, material.

A new agreement, extending the time for the performance of a contract, is evidence that the parties to such contract deemed the time material.

Where land is purchased by several persons, jointly, they are not rendered partners, by such purchase. The purchasers are tenants in common; and a notice to one is not a notice to the others.

Where the plaintiff's claim is for damages only, a court of law is the only proper forum.

Although a court of equity will sometimes give damages in lieu of a specific performance of a contract, it will do so only where it has obtained jurisdiction of the cause on other grounds.

Where the defendant has the power to fulfil his contract when the bill is filed, but from any cause becomes unable to do so during the pendency of the suit; or when at the time of making the decree he can perform it in part only; in either case, the court, having had jurisdiction at first, or having the power to afford partial relief by decreeing a specific performance as far as the defendant's ability extends, can give the plaintiff compensation by way of damages. This is as far as the principle ought to be carried.

Wiswall *v.* McGown.

IN EQUITY.    This was an appeal, by the plaintiffs, and by the defendant McGown, from separate parts of a decree of the late assistant vice chancellor of the first circuit, made on the 31st of December, 1840.    The bill was filed against Andrew McGown, then the sole defendant.    On the coming in of his answer, the bill was amended, making Edward Sandford a party defendant. After filing Sandford's answer, the bill was further amended, so as to make Harris, Hall, Graham and Hallett defendants.    The defendants all appeared and put in their answers.    The cause was heard upon pleadings and proofs.    The bill stated that the plaintiffs, in the month of February or March, 1834, entered into a negotiation with the defendant Andrew McGown for the purchase of land in the twelfth ward of the city of New-York, east of the third avenue, represented by McGown as belonging to him.    An agreement was made, in writing, and signed by the plaintiffs and McGown, without date, which is as follows :

"Andrew McGown     ⎧ Sale of land east of third avenue
        to               ⎨        at 38,000.
E. Wiswall and F. Price. ⎩

All marsh meadow and water right thrown in subject to the lease and conditions to Merrill Platt. Payments 35,000 to remain on bond and mortgage at 6 per centum on or before ten years, interest half-yearly.   Interest to commence 1st May, 1834.    McGown to receive rents to that time $15,000 to be secured by collateral mortgage on other property on the island of New-York satisfactory to McGown $3000 to be allowed W. & P. for services rendered McGown."

At the time of the agreement, part of the property was subject to a lease to Merrill Platt and others, and the plaintiffs were to pay the lessees all claims under the lease, not exceeding $1000.    In conversation between the parties, after the agreement was made, it was agreed that the agreement should be carried into effect on or before the 15th day of November then next, and the plaintiffs caused surveys and maps of the premises to be made, entered into negotiations for the sale thereof, and exercised rights of ownership not inconsistent with the rights of the lessees, with the knowledge and assent of Mc-

Gown. On or about the 13th of October, 1834, the plaintiffs made an agreement with Richard Reed of New-York, to sell and convey to him part of the property; which agreement was communicated by them and Reed to McGown and to Isaac Adriance his counsel, and was approved of. Reed, in compliance with his agreement, paid to Isaac Adriance, on the 1st of November, $1000, and was to pay $3000 on the 15th, when he was to receive his deed. The bill charged that before the 15th of November the plaintiffs had satisfactorily arranged the collateral security for $15,000, in conformity with their agreement, and they were ready on that day fully to execute the agreement. The title for the property sold to Reed was not to pass through the plaintiffs, but the deed was to to be directly to Reed. On the 15th day of November Reed called on Adriance, who was authorized to represent McGown, and offered to pay the $3000 and demanded his deed. Adriance said the deed was not ready, and he would give notice when it was. McGown repeatedly referred to Adriance as his representative, and said every thing done by Adriance would be the same as if done with himself. On or about the 5th of December, McGown informed Wiswall he was afraid he could not give a title: his family objected, and he would lose $10,000. Wiswall said his noncompliance would be serious to the plaintiffs, who had agreed to convey part to Reed. McGown said he would endeavor to give a good title and to fulfil his agreement. On the following day, McGown told Wiswall he could give the title, but as he had a great deal of trouble, the plaintiffs must give him four lots to be selected by him. The plaintiffs agreed to this; and a new agreement was drawn by Mr. Adriance, which was signed by the parties, and was in substance as follows: McGown to sell and convey to the plaintiffs all his land east of the third avenue, for $35,000, payable in the year 1845, with interest half-yearly at six per cent, with additional security for $10,000. Deeds to be without covenants; McGown to give deeds for sale by Wiswall and Price; cash and securities to be received by him until he should be fully paid; Wiswall and Price to settle with lessees; McGown to have four lots on third avenue exclusive

Wiswall v. McGown.

of above consideration money. This agreement was dated 1st of May, 1834, but was made on the 9th of December. It was not intended to destroy the first agreement, but as additional and explanatory, and to bind the plaintiffs as to the four lots. At the time of the first agreement, the plaintiffs supposed the fee was in McGown, and knew nothing to the contrary until he mentioned the difficulty about title; when they were told the title was in his mother. But McGown and Adriance both assured the plaintiffs that would not prevent McGown's giving title as agreed; as his mother had in her will devised the said premises to him, and she would convey the same for his use, as he might require. The doubt about the title was not known to the plaintiffs till after the contract with Reed and the communication thereof to McGown and Adriance. On the day of executing the last agreement, 9th Dec. the plaintiffs were informed by McGown and Adriance that they were ready to convey. The day was spent at Adriance's office, arranging papers, &c. Every thing was arranged to the satisfaction of McGown and his counsel; nothing was to be done but to receive the $3000 from Reed and deliver the papers to the parties. McGown was to receive the $3000 to be paid by Reed, but he was so well satisfied with the securities to be given by the plaintiffs that he authorized Adriance, out of said sum to endorse on the plaintiffs' bond $2000 and the interest, and to permit the plaintiffs to retain the residue, $1000, in the hands of Adriance to be applied to the claims of Merrill Platt and others. About 3 o'clock on the 8th December, one of the plaintiffs told Reed to go to Adriance's office, where McGown was, and settle the business. Reed went about 4 o'clock, and parties had all left. On the next day Reed told one of the plaintiffs that as the matter was not closed on the 15th of November, when he was prepared, he had parted with the money to a friend then absent, on whose return he would pay Adriance and get his deed. On the same day, McGown asked Wiswall if the lessees had been paid. Wiswall said no, but should be as soon as Reed paid. McGown said, I consider the matter as arranged and the property yours; and asked if the plaintiffs

would sell him a piece designated.   The plaintiff said when the papers were exchanged, they would do what was fair.   On the same afternoon, 10th December, Adriance informed Reed, by note, that if the $3000 was not paid that afternoon, the negotiation was at an end.   The 11th of December was thanksgiving day, and the plaintiffs had no notice of the note to Reed, or of the dissatisfaction, or intention of McGown to violate the agreement, until about 12 o'clock on Friday, 12th December. They then called on Reed, who said the person who had his money had not returned ; thought he was entitled to indulgence, as the money was ready on the 1st of November ; but if absolutely necessary he would get it elsewhere.   On the 15th of December Wiswall offered to pay Adriance ; who said he was forbidden to deliver the deed or receive the money.   If McGown would receive it, he would send for it.   On the 16th of December, $3000 with the securities which had been examined and approved by McGown and Adriance were tendered to Adriance, and the deed for Reed then in Adriance's hands demanded.   Adriance refused to receive the money and securities or to deliver the deed.   The plaintiffs told McGown of the tender to Adriance, who said he knew all about it.   They said they were ready to pay him, and required him to perform his agreement.   He refused, and said he had been offered a much larger sum.   After McGown heard that the plaintiffs intended filing a bill to enforce his agreement, with a view to prevent any effectual decree against him, by putting it out of his power to convey the property to the plaintiffs, he made an agreement with Edward Sandford for the sale of the said premises to him ; and on the 30th of January, 1835, McGown procured a conveyance for the property in fee simple from his mother Margaret McGown to Sandford.   The bill alleged that the purchase by Sandford was not bona fide and for a valuable consideration, but was fictitious and in fraud of the plaintiffs' rights.   That if the purchase was not fictitious, then it was made at the suggestion of other persons not known till Sandford's answer came in ; after which Harris, Hall, Graham and Hallett were made parties, and charged as interested in the said purchase.   That

Sandford and his said associates, or some of them, had notice of the agreement made with the plaintiffs, and of their claim to a conveyance of the premises. The bill prayed for a discovery on oath; that the conveyance to Sandford might be annulled and set aside, and that McGown might be compelled specifically to perform his agreement with the plaintiffs.

The answer of McGown admitted the negotiation for a purchase; but insisted that he did not represent himself as owner. The negotiation terminated in the agreement as set forth in the bill. Divers conversations took place after the agreement, in which the time to carry the same into effect was agreed to be 1st of May then next. About 1st of May the plaintiffs were not ready, and asked an extension to the 1st of November; which the defendant, without any valuable consideration, agreed to. The defendant claims that such agreement to extend the time was void in law. The time was again extended to the 15th of November at the request of the plaintiffs, without consideration. Defendant insists that the same was void, and of no effect in law. That the defendant understood from Adriance, that about 4 o'clock in the afternoon of the 15th of November, Reed called on Adriance, who was sometimes counsel for the defendant, but not authorized to represent him in the settlement of this matter, and said he wished to pay the $3000 and take his deed: but he did not tender the money or demand a deed. Defendant admits that he afterwards told Wiswall he could give the title, but in consideration of trouble he must have four lots; which the plaintiffs agreed to; and had the agreement made on the 9th of December, 1834. This agreement was drawn by Adriance, and assented to by the defendant, on condition that $4000 should on that day be paid to him or Adriance. The agreement was left with Adriance on that condition, and to be inoperative unless the money was paid. He admits that he procured a deed to Reed from his mother; and that the second agreement is as set forth in the bill, and was ante-dated as mentioned, and was intended as a substitute for the other agreement and to supersede the same. But that the plaintiffs did not pay on the 9th of December, and

the agreement became void. That on the 10th of December, the money not being paid, but the defendant being willing still to complete the agreement, he instructed Adriance to deliver the papers if the money was paid that day; if not, he would have no more to do with it. The money was not paid on the 10th, and he considered the matter at an end. He avers that the contract was of no validity after 8th of December, and on the 10th he concluded to put an end to all negotiation on the subject. The defendant admits that on the 10th of December, about 1 o'clock, he saw Wiswall at Adriance's office. Defendant supposed the money had been paid, and asked if Merrill Platt and others had been paid. Wiswall said they had not, but should be soon. Defendant does not remember saying to Wiswall the matter is arranged and the property yours. If he did, it was while he supposed the money had been paid. Believes that while under such impression he asked Wiswall to sell him a piece of the ground, and Wiswall replied, when the papers were exchanged he would do what was fair. He directed Adriance to notify the parties, that if the money was not paid on the 10th the negotiation would be at an end. Margaret McGown conveyed the property, on 30th January, 1835, for a valuable consideration, to E. Sandford; to whom, after the failure of the plaintiffs to complete their purchase, he agreed to sell the same. Defendant's mother was seised in fee. of the premises until they were thus conveyed. She had made a will devising the property to him; and he could have procured the title if the plaintiffs had performed their contract.

The defendants Sandford, Harris, Hall, Graham and Hallett put in answers stating that they purchased the premises in good faith, and for a valuable consideration; and without notice or knowledge of any outstanding claim against the property, on the part of the plaintiffs, or any other person or persons.

The assistant vice chancellor made a decree dismissing the bill of complaint as to all the defendants except McGown, with costs; and directing a reference to a master to assess and compute the damages sustained by the plaintiffs by reason of the refusal of the defendant McGown to perform and fulfil his con-

tract with them.   The plaintiffs appealed from so much of that decree as directed their bill to be dismissed, as against the defendants Sandford, Harris, Hall, Graham and Hallett ; and the defendant McGown appealed from the residue of the decree.

*Isaac A. Johnson,* for the plaintiffs.

*James Smith & E. Sandford,* for the defendants.

*By the Court,* STRONG, P. J.   The paper first subscribed by the plaintiffs and the defendant McGown was intended as a minute or memorandum of a contract to be drawn and executed at a future period.   It was however subsequently treated by the parties to it as a contract, and must now be considered as such.   It contained an imperfect description of the land, had no date, and did not specify the time when the agreement was to be performed.   It is competent, however, for the parties to a contract to go into parol evidence more clearly to define its subject matter, provided such evidence is merely explanatory, and not contradictory.   The defect in description, in this case, was cured and additional evidence rendered unnecessary, by the admission in the answer of McGown that the lands intended to be conveyed were identical with those specified in the conveyance to the defendant Sandford.   As no time was specified in the memorandum, for the conveyance of the property, the legal inference would be that it should be made in a reasonable time. The day settled by the parties was the 1st of the following month of May.   It was competent for them to fix the time by parol, as the statute, (2 *R. S.* 69, § 8,) does not require that such particular should be in writing.   The time was next extended by the parties to the 1st of November following, and subsequently to the 15th of that month.   There was a mutuality which was a sufficient consideration for the agreement of each party for such extensions.   It appears from the testimony of Mr. Adriance, who was examined for the plaintiffs and was the only witness in the cause, that they were not ready to perform the agreement on their part, either on the 1st of May or

Wiswall *v.* McGown.

on the 1st or 15th of November, and that the extension of time was in each instance at their request. It is true that McGown was not prepared to fulfil the contract at either of those periods, as he had not the title to the land. But it is apparent that had the complainants been ready on their part he could have obtained the title at any time. The delay was caused by the complainants, and the failure to fulfil the agreement on the 15th of November was attributable to them. The question, so far as it relates to the first contract, is whether McGown was under any obligation to convey the land after that day. Courts of equity have sometimes interposed in favor of parties who were not ready at the day, when in their opinion the time specified in a contract for its fulfilment was not essential. But when a further indulgence is granted it should only be in extreme cases, where a party has failed through some unforeseen accident, or where there is something indicating a waiver of the objection by the other party. The parties have a right to fix their own terms, and I know of no power in the court to determine which of them are, and which of them are not material. If they had such power it would be very hard to draw the line of distinction. That would have to depend upon the particular opinions of the judge who should decide the cause. It is far better to let the parties settle the terms of their own agreement, than that this court should make one for them. It is apparent, however, that the parties to this contract did eventually deem the time material. If they had not, they would not have thought it necessary to extend it by a new agreement for so short a period as from the 1st to the 15th of November. What would have been the use of the extension, if the rights of the parties would have been the same without it? Besides, no excuse is offered by the plaintiffs for their failure on the last mentioned day.

It has been contended that the transaction between the plaintiffs and McGown, on the 9th of December, was a waiver of the objection on his part arising from the non-performance of the contract by the plaintiffs on the 15th of November. I do not view it in that light. Mr. Adriance testifies that one reason

for making the second agreement was that the first had then expired.   It is true that many of the terms of the two contracts were substantially the same.   But it was certainly competent for the parties to incorporate in the second contract as many of the terms of the first as they chose.   There were several new provisions advantageous to McGown.   The deed to be given by him was to be without covenants, and he was to retain four lots.   This last contract was, however, delivered to Mr. Adriance as an escrow, and the condition on which it was to be delivered to the parties absolutely is strong to show that they then considered the first contract at an end.   It was to be delivered to the plaintiff, if Reed, to whom they had previously sold a part of the land, should pay a part of the consideration money to McGown on the same day ; otherwise it was to be null and void.   Why should this condition be imposed if the first contract had been still operative ?   The second was more advantageous to McGown, and he would prefer enforcing that, at all events, to the continuance of the other.   Neither could the parties have designed that the complainants should be the gainers by their own default, or the default of one for whose conduct they were responsible.   The supposition that the first contract was then considered by the parties as still valid, and that the second was intended as a mere addition to it, is at variance with the whole transaction.

But the agreement made on the 9th of December was never consummated.   The money was not paid on that day.   True, McGown consented to waive the objection arising from such non-payment, if the money should be paid on the following day. But it was not then paid, and there is no principle which would justify this court in extending the waiver beyond the time fixed by the party himself.   I repeat, that we cannot make a new agreement between the parties.   Nor, if we could, should I feel disposed to do it, after such repeated delays, and for which no satisfactory excuse is offered.

By holding that the plaintiffs have forfeited their right to claim a conveyance of the lands in question by reason of the delay, I adopt no more stringent rule than was laid down by

Wiswall *v.* McGown.

Lord Loughborough in *Lloyd* v. *Collett*, (4 *Bro.* 469,) by Lord Alvanley in *Milwaird* v. *Earl Thanet*, (5 *Ves. Rep.* 720, *n. l.*) by Lord Erskine in 13 *Ves. Rep.* 224, and by Chancellor Kent in *Benedict* v. *Lynch*, (1 *John. Ch.* 370.) In the last case the chancellor, after reviewing the leading cases on this subject, says : " From the review which I have taken of the cases, the general principle appears to be established that time is a circumstance of decisive importance in these contracts ; but it may be waived by the conduct of the party : that it is incumbent to [upon] the plaintiff calling for a specific performance to show that he has used due diligence, or, if not, that his negligence arose from some just cause, or has been acquiesced in ; that it is not necessary for the party resisting the performance to show any particular injury or inconvenience. It is sufficient if he has not acquiesced in the negligence of the plaintiff, but considered it as releasing him."

The deed from Mrs. McGown is imperfectly described, nor is it stated whether the delivery of it to Mr. Adriance was absolute or conditional. If it conveyed the title of the land to the defendant McGown, as the plaintiffs contend, that could in no manner benefit them in this controversy. It assuredly vested no equitable estate in them ; as there was no valid and subsisting contract between them and McGown. If the original contract had still been operative as between the parties to it, the plaintiffs could not have set up this unrecorded deed against the other defendants if they were bona fide purchasers without notice ; as the conveyance to them was recorded. It is said that some of the subsequent purchasers had notice of the contract between McGown and the complainants before they acquired their title to the premises. True, one of them had been informed of the existence of such contract by Mr. Adriance, but subsequently, and before the purchase, he was told by the same person that it was broken off. It is contended that this intended purchaser should have made further inquiry, but I can see no reason for that. The source of information was the same in both instances. As much credit was justly due to one statement as to the other. Besides, as to some of the purchasers

Wiswall v. McGown.

there is no pretence that they had any notice at all. Those co-purchasers were not partners : they were tenants in common ; and a notice to one would not have been a notice to the others. The bill in this cause was no notice, in any sense of the word, to the last purchasers. Sandford took his deed, and executed his mortgage, as early as the 31st of January. The deeds and mortgage were recorded on the 4th of February. The bill was filed on the 3d of February, but neither Sandford nor the defendants for whom he acted were then made parties, nor was any notice of lis pendens filed until several months afterwards. Clearly their title should not be affected by any previous transaction between McGown and the plaintiffs. The decree of the vice chancellor dismissing the bill as to them was correct, and must be affirmed. I think that the vice chancellor erred in deciding that the plaintiffs, supposing that their first contract was still valid and that McGown had put it out of his power to perform it, could retain their bill against him for damages. Where the claim is for damages only, and in this case the plaintiffs had no other, a court of law is the only proper forum. True, a court of equity will sometimes give damages in lieu of a specific performance of a contract; but that, I conceive, is only where it has obtained jurisdiction of the cause on other grounds. Where the defendant has the power to fulfil his contract when the bill is filed, but from any cause becomes unable to do so during the pendency of the suit, or when at the time of making the decree he can perform it in part only, in either case the court having had jurisdiction at first, or having the power to afford partial relief by decreeing a specific performance as far as the defendants can go, can give the plaintiff compensation by way of damages. (*Kempshall* v. *Stone*, 5 *John. Ch. Rep.* 193.) Some of the cases have gone further, but they are not well supported, and we are not inclined to follow them.

The fact that the plaintiffs were ignorant of the want of power in McGown to convey the title when the bill was filed is not averred in the bill, nor does it any where appear; nor, if it

had been apparent, could their ignorance have conferred jurisdiction upon a court of equity.

So much of the decree as directs a reference to a master to, ascertain and report the amount of damages sustained by the plaintiffs, by reason of the refusal of the defendant McGown to, convey to them, must be reversed.   And the bill must be dis-. missed, with costs, and the plaintiffs must pay the costs of both appeals.

---

DUTCHESS GENERAL TERM, September, 1847.   *Strong, Morse, and Barculo,* Justices.