FUD'S, INC. et al.

v.

**STATE of Rhode Island et al.**

No. 98–408–Appeal.

Supreme Court of Rhode Island.

March 31, 1999.

Robert J. Ameen, Pawtucket, Rebecca Tedford Partington, Providence, for plaintiff.

Christopher M. Mulhearn, Cynthia M. Hiatt, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

The Superior Court has certified to us the following question:[1] do employers have a constitutional right to a jury trial in connection with unlawful-employment-practice charges that are brought against them? The Fair Employment Practices Act (FEPA), G.L.1956 chapter 5 of title 28, allows employees and other aggrieved parties (collectively, employees) to file unlawful-employment-practice charges against employers. Under FEPA, such charges are filed with the defendant, Rhode Island Commission for Human Rights (commission).[2] After conducting a

---

1. The text of the certified question asks:

    "[w]hether the procedure created by R.I. Gen. Laws § 28–5–1 et seq. and R.I. Gen.Laws § 42–35–1 et seq., together operate to deprive respondents in proceedings before Rhode Island's Commission for Human Rights a right to a jury trial as set forth in Article I, § 15 of the Constitution of the State of Rhode Island?"

2. The Fair Employment Practices Act (FEPA) defines an unlawful employment practice as the

employer's (1) refusal to hire an individual on the basis of race or color, religion, sex, disability, age, sexual orientation, or country of ancestral origin, (2) discharge of an employee for these same reasons, (3) utilization of an employment recruitment policy that discriminates on one or more of these bases, or (4) refusal to reasonably accommodate an individual's disability unless the employer establishes that the accommodation would pose a hardship on its business. FEPA also prohibits unlawful employment practices

preliminary investigation of the charges and attempting to eliminate or conciliate any alleged unlawful employment practice(s), the commission may issue a complaint to employers specifying the charges and noticing a hearing before the commission. *See* § 28–5–18. Between 120 days to two years after filing the charge, however, employees may request an authorization from the commission to file suit in Superior Court. *See* § 28–5–24.1. The commission must grant this right-to-sue authorization within thirty days after receiving the employees' request. *See id.* As a result, employees can bypass any hearing before the commission (provided that the commission's hearing has not yet begun) and pursue an employment-discrimination suit against employers in Superior Court. *See id.* But if any employee does so, then either party may opt for a Superior Court jury trial of the underlying discrimination claims and defenses.

Employers, however, enjoy no such similar right to bypass the commission. Unlike employees, they are unable to request the commission's authorization to litigate employees' discrimination claims in Superior Court. As a result, employers cannot obtain a jury trial of employees' discrimination charges unless an aggrieved employee decides to request the commission for its authorization to file suit in the Superior Court. Instead, employers are subject to the initial jurisdiction of either the commission or the Superior Court, depending solely upon the employees' choice of forum. Moreover, if an employee elects a commission hearing and obtains a favorable ruling, then the employer may obtain only an on-the-record administrative review of the commission's decision in the Superior Court. *See* Administrative Procedures Act, G.L.1956 § 42–35–15.[3] The certified question asks us

to determine the legality of this process under the right-to-a-jury-trial section of the Rhode Island Constitution. After briefly relating the facts and travel of this case, we proceed to explain why this statutory scheme is unconstitutional.

## Facts and Travel

The defendant, Denise A. Thayer (Thayer), filed a charge with the commission alleging that her former employer, plaintiff FUD's, Inc. (FUD's), discriminated against her with respect to the terms and conditions of her employment. Thayer claimed that she was unable to operate a motor vehicle to transport herself to and from her waitressing job at a FUD's restaurant because of a degenerative, myopic condition in both her eyes. During the commission's preliminary investigation, the parties presented conflicting evidence about whether FUD's in fact fired Thayer because of her disability or whether she refused to continue working there after FUD's inquired about her ability to drive herself to and from work. Nevertheless, after investigating and finding probable cause that an unlawful discriminatory employment practice occurred, the commission issued a notice of hearing on Thayer's charges. The commission conducted a hearing on the matter, and thereafter, a hearing commissioner issued a decision on behalf of the commission. The commission found that FUD's had discriminated against Thayer with respect to the terms and conditions of her employment because of her disability. It also found that FUD's had terminated Thayer and denied her a reasonable job accommodation on account of her disability, thereby violating § 28–5–7 and G.L.1956 § 42–87–2. Consequently, the commission ordered FUD's, in-

committed by employment agencies and labor organizations. *See* G.L.1956 § 28–5–7.

**3.** In particular, G.L.1956 § 42–35–15(g) states: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences [*sic*], conclusions, or decisions are: ·

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error or [*sic* ] law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

ter alia, to cease and desist from further unlawful employment practices, to offer its next available waitress position to Thayer, and to remit to Thayer $14,201.18 in back pay and $7,000 in compensatory damages for her pain and suffering.

FUD's appealed this decision to the Superior Court, arguing inter alia that the commission's procedures unconstitutionally deprived FUD's of its right to a jury trial. Because of this challenge to a state statute's constitutionality, the Superior Court granted the Attorney General's motion to intervene as a party plaintiff. *See* G.L.1956 § 9–30–11. Thereafter, the Attorney General moved to certify the employer's right-to-a-jury-trial question to this Court, and the Superior Court granted this request. The Attorney General has submitted a legal brief to this Court in support of FUD's position, arguing that FEPA's procedures are unconstitutional because they prevent employers from obtaining a jury trial on employees' discrimination claims unless an aggrieved employee opts to bypass the commission and sue in Superior Court. For the reasons discussed below, we hold that FEPA's statutory scheme violates employers' rights to a jury trial, and therefore, we answer the certified question in the affirmative.

### Analysis

■ Pursuant to article 1, section 15, of the Rhode Island Constitution (constitution), "[t]he right of trial by jury shall remain inviolate" in this state. Accordingly, this right is not only immune to any legislative attempt at abolishment or alteration, *see Dyer v. Keefe,* 97 R.I. 418, 198 A.2d 159 (1964), but it also must remain available to litigants in any type of legal action which was triable before a jury in 1843, the year when Rhode Island's first constitution became effective. That constitution included the same language as is now contained in article 1, section 15, of the current constitution. *See Egidio DiPardo & Sons, Inc. v. Lauzon,* 708 A.2d 165, 171 (R.I.1998); *Bendick v. Cambio,* 558 A.2d 941, 943–44 (R.I.1989).

■ In attempting to determine whether a cause of action triggers the right to a jury trial, we generally ask whether the particular cause of action or any analogous claim would have been triable to a jury in 1843. *See DiPardo,* 708 A.2d at 171–72; *see also Bendick,* 558 A.2d at 944–45 (citing *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)) (analogizing the imposition of civil penalties by an administrative agency for the violation of penal statutes to a common-law debt action triable to a jury). We also try to assay whether the type of relief available for the cause of action is legal or equitable. *See Bendick,* 558 A.2d at 945; *see also Tull,* 481 U.S. at 417–18, 107 S.Ct. at 1835, 95 L.Ed.2d at 373. Indeed, this available-relief analysis is " '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether" article 1, section 15, mandates the opportunity for a jury trial. *Tull,* 481 U.S. at 421, 107 S.Ct. at 1837, 95 L.Ed.2d at 375 (quoting *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260, 267 (1974)).

Because a court may grant any such relief to which a complainant is entitled "even if the party has not demanded such relief in the party's pleadings," Super.R.Civ.P. 54(c), we look to FEPA's available remedies to ascertain whether legal relief may be awarded if the charges are found to be proven. Indeed, regardless of the scope of the employee's actual prayer for relief, both the commission and the Superior Court possess the power to award the employee remedies in lieu of or in addition to those remedies specifically requested. *See* §§ 28–5–24 and 28–5–24.1 (empowering the commission and the Superior Court to award various injunctive and other remedies upon determining that the employer has engaged in or is engaging in unlawful employment practices).

Until 1991, the General Assembly had authorized the commission to provide mostly equitable remedies to a complaining employee upon finding that an employer had engaged in or was engaging in unlawful employment practices. *See Town of Johnston v. Ryan,* 485 A.2d 1248, 1250 (R.I.1984) (holding that because "most of the remedies available to the commission are equitable in nature," an employee was not required to comply with G.L.1956 § 45–15–5 by presenting her claims to the town council before

filing a discrimination charge with the commission). Specifically, the commission could order a respondent to cease and desist from any unlawful employment practice(s), or it could award other equitable remedies, including, but not limited to, hiring, reinstatement, or upgrading of affected employees with or without back pay, as well as admission or restoration of the employee to union membership, and it could require the employer to file reports concerning the manner of its compliance. *See* § 28–5–24(a). In 1991, however, the General Assembly amended FEPA to enable the commission to award compensatory damages, *see* § 28–5–24(b), as well as punitive damages, *see* § 28–5–29.1.

While the remedies available under FEPA before 1991 were mostly equitable in nature, the remedies added by the 1991 amendment—compensatory and punitive damages—constitute traditional forms of legal relief. *See Curtis,* 415 U.S. at 195–96, 94 S.Ct. at 1009, 39 L.Ed.2d at 267 ("[T]he relief sought here—actual and punitive damages—is the traditional form of relief offered in the courts of law."). Although we have looked to the conclusions and reasoning contained in United States Supreme Court decisions to inform our own right-to-a-jury-trial jurisprudence, *see DiPardo,* 708 A.2d at 171–72; *Bendick v. Cambio,* 558 A.2d 941 (R.I.1989); *Rowell v. Kaplan,* 103 R.I. 60, 235 A.2d 91 (1967), we follow a distinctly more historical approach with respect to this issue than the Supreme Court. *See Bendick,* 558 A.2d at 944. *Cf. Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (requiring that where both legal and equitable issues are presented in a single case, any legal issues for which a jury trial is timely and properly demanded be submitted to a jury); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (same). *See also DiPardo,* 708 A.2d at 171 ("[I]n assessing whether a particular cause of action merits a jury trial, we look to the historical nature of the claim, tracing its origins and striving to discern analogies to forms of action known to the common law before the merger of law and equity."). Thus, in addition to recognizing the Supreme Court's categorization of compensatory and punitive damages as traditional forms of legal relief, we also examine the historical and common-law treatment of these remedies.

█ Historically, punitive damages have long been considered a form of legal relief in this state, *see, e.g., Rowell,* 103 R.I. at 68, 235 A.2d at 96 (stating that, in accordance with tradition, we have considered any claims for monetary damages as legal in nature), as well as in many other jurisdictions, *see, e.g., Roach v. Concord Boat Corp.,* 317 Ark. 474, 880 S.W.2d 305 (1994); *Mullins v. Ward,* 712 P.2d 55 (Okla.1985); *Seal v. Hart,* 755 P.2d 462 (Colo.Ct.App.1988); *Prucha. v. Weiss,* 233 Md. 479, 197 A.2d 253 (1964); *Campbell v. Bi–Lo, Inc.,* 301 S.C. 448, 392 S.E.2d 477 (App.1990). Although separate courts of equity have been abolished in Rhode Island and in many other jurisdictions, we nevertheless take note that, in days of yore, equity courts could not award punitive damages, as only courts of law were permitted to do so. *See, e.g., Livingston v. Woodworth,* 56 U.S. (15 How.) 546, 559–60, 14 L.Ed. 809, 815 (1853) (noting the harshness in allowing a court of equity to award punitive damages); *United States v. Bernard,* 202 F. 728, 732 (9th Cir. 1913) (recognizing that by applying to an equity court, the plaintiff waives all claims for punitive damages); *Bird v. W. & M. R.R. Co.,* 8 Rich.Eq. 46, 57 (S.C.1855) (same); *Witkop & Holmes Co. v. Great Atlantic & Pacific Tea Co.,* 69 Misc. 90, 124 N.Y.S. 956, 958 (1910) (same); 1 Theodore Sedgwick, *Sedgwick on Damages* § 371, at 727 (9th ed.1912) (noting that a court of equity does not possess the power to award punitive damages). Thus, in light of historical and contemporary jurisprudence, we likewise categorize punitive damages as legal in nature.

A brief recourse to the historical treatment of compensatory damages yields a similar conclusion. As United States Supreme Court Justice Joseph Story explained:

"[F]or breaches of contract, and other wrongs and injuries, cognizable at law, courts of equity do not entertain jurisdiction to give redress by way of compensation or damages, where these constitute the sole objects of the bill. For, wherever the matter of the bill is merely for damages, and there is a perfect remedy there-

for at law, it is far better that they should be ascertained by a jury than by the conscience of an equity judge. And indeed the just foundation of equitable jurisdiction fails in all such cases, as there is a plain, complete, and adequate remedy at law. Compensation or damages (it should seem) ought, therefore, ordinarily to be decreed in equity only as incidental to other relief sought by the bill, and granted by the court ***." *See* 2 *Commentaries on Equity Jurisprudence* § 794, at 1–2 & n. 1 (12th ed. 1877) (citing Gilbert, For. Roman. ch. 12, p. 219; *Clifford v. Brooke,* 13 Ves. 130, 131, 134; *Blore v. Sutton,* 3 Meriv. 247, 248; *Newham v. May,* 13 Price, 749, 752; *Wiswall v. McGown,* 2 Barb. 270; *Shepard v. Sanford,* 3 Barb. Ch. 127).

The compensatory and punitive damages that the commission can award for discrimination claims are not merely "incidental to other relief sought;" rather, they would appear to constitute a substantial portion of the basic relief that the commission may award under FEPA. Thus, in the case at bar, in addition to ordering the employer to remit over $14,000 in back pay and to reinstate the employee, the commission ordered the employer to compensate the complainant in the amount of $7,000 for her pain and suffering. Based upon our review of both state and federal jurisprudence, *see, e.g., Rowell,* 103 R.I. at 68, 235 A.2d at 96, and *Curtis,* 415 U.S. at 195–96, 94 S.Ct. at 1009, 39 L.Ed.2d at 267, the availability of an open-ended award of compensatory and punitive damages in response to a FEPA charge, coupled with the potentially significant financial impact of such an award upon any given respondent employer, indicates that this type of employment-discrimination claim bears more similarity to an action at law than to an equitable cause of action. *Cf. Bendick,* 558 A.2d at 945 ("Here we have an open-ended claim for a significant sum.").

The Supreme Judicial Court of Massachusetts faced a similar issue in a 1994 sex-discrimination case. *See Dalis v. Buyer Advertising, Inc.,* 418 Mass. 220, 636 N.E.2d 212, 215 (1994) (quoting *Gallagher v. Wilton Enterprises, Inc.,* 962 F.2d 120, 122–23 (1st Cir.1992)) ("Courts have routinely held that discrimination suits in general, *and employ-*

*ment discrimination suits in particular,* are analogous to either of two common law causes of action [tort and contract].") (Emphasis added.) In *Dalis,* Massachusetts' highest court held that a suit for sex discrimination in an employment context triggered either party's right to claim a jury trial. The court reasoned that such a claim was sufficiently similar to a common-law tort or contract action at law where a jury trial was traditionally available. We also take note of the United States Supreme Court's decision in *Curtis,* 415 U.S. at 195–96 n. 10, 94 S.Ct. at 1009 n. 10, 39 L.Ed.2d at 267 n. 10. There, the high Court stated that "[a]n action to redress racial [or gender] discrimination may also be likened to an action for defamation or intentional infliction of mental distress." *Id.* Although an action for employment discrimination did not exist at common law in 1843, *see* P.L.1949, ch. 2181 (creating a statutory cause of action for employment discrimination), the nature of such a dispute—two parties adjudicating rights arising out of an employment relationship where a court may award punitive and compensatory damages—appears to us as more analogous to a common-law legal action in tort or contract than to any other equitable cause of action we can discover in Rhode Island's jurisprudence.

■ Because we conclude that an important and potentially substantial component of the statutory relief available here is legal in nature and that the cause of action itself is more analogous to an action triable before a jury in an 1843 court of law than to any equitable cause of action, we conclude that a FEPA action triggers employers' rights to a jury trial. Consequently, FEPA's deprivation of that right to a jury trial is unconstitutional. Although FEPA's constitutional infirmity could be cured by granting to employers substantially the same statutory option as that presently afforded to employees—namely, the right to bypass the commission entirely via a right-to-sue authorization and to proceed instead to a Superior Court jury trial—we shall leave it to the General Assembly to decide how best to cure this defective remedial

scheme without endeavoring to rewrite the statute ourselves.

■ Before remanding this case to the Superior Court for additional proceedings, however, we need to address one further issue. This Court has held that if a cause of action involves the adjudication of public rights, then neither the Seventh Amendment to the Federal Constitution nor article 1, section 15, of our constitution requires a court to afford the parties to such a dispute the right to a jury trial. *See National Velour Corp. v. Durfee,* 637 A.2d 375, 379 (R.I. 1994) (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). "Public rights" include those "statutory rights that are integral parts of a public regulatory scheme and whose adjudication [the legislature] has assigned to an administrative agency or specialized court of equity." *National Velour,* 637 A.2d at 379 (quoting *Granfinanciera,* 492 U.S. at 55 n. 10, 109 S.Ct. at 2797 n. 10, 106 L.Ed.2d at 49 n. 10).

■ The FEPA action involved here does not exclusively involve "public rights" as they were defined in *National Velour.* Although the right of employees to be free from employment discrimination is indeed "statutory" and its "adjudication has [been] assigned to an administrative agency," their right to sue employers and to obtain compensatory and/or punitive damages for any violation of their rights to be free from employment discrimination falls more on the side of a traditional private remedy for legal wrongdoing than it does on the side of constituting an integral component of a public regulatory scheme.

■ The declared policy of FEPA is "to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race or color, religion, sex, sexual orientation, handicap, age, or country of ancestral origin, and to safeguard their right to obtain and hold employment without such discrimination." Section 28-5-3. Although the commission's ability to order an employer to reinstate with back pay an employee who has suffered job discrimination may constitute an integral part of such a scheme because it directly "foster[s] the employment of individuals in this state," the commission's ability to order a private employer to compensate a former employee for his or her pain and suffering and—in cases involving malice, ill will, or reckless or callous indifference—to award punitive damages, *see* § 28-5-29.1, more closely resembles the adjudication of a tort dispute between two private parties. In *National Velour,* we explicitly stated that "[i]n assigning powers to an administrative agency to find facts and assess penalties, the legislative power may not be unlimited in clothing administrative agencies to conduct the type of litigation that has heretofore been solely within the power of judicial tribunals. This is a question we would reserve until a case squarely presents it to us." 637 A.2d at 380–81 n. 8. This case presents such a question. And we hold that this type of hybrid cause of action—that is, one involving not only the adjudication of public rights, but also of a private party's right to obtain compensatory and/or punitive damages from another private party for a statutory violation—is one that we place outside the public-rights doctrine, but within a litigant's inviolable constitutional right to obtain a jury trial.

## Conclusion

■ In sum, we answer the certified question in the affirmative. We hold that FEPA's statutory procedure for adjudicating employment-discrimination charges is unconstitutional because it deprives employers of the right to elect either a hearing before the commission or a Superior Court jury trial while granting this same right to employees. For these reasons, we vacate the commission's findings and order and remand this case to the Superior Court for further proceedings consistent with this opinion, including the extension to both parties of the opportunity to request a Superior Court jury trial on the employee's discrimination charges. Any final equitable relief shall await the conclusion of the legal proceedings

and any related fact finding by the jury. *See DiPardo,* 708 A.2d at 170 (requiring a jury to try issues of fact relative to any underlying legal issues even in a case where a party also requests substantial equitable relief).

Justice GOLDBERG did not participate.