DECISION
Before the Court is the Rhode Island Economic Development Corporation's (EDC) appeal of the administrative decision of the State of Rhode Island Commission for Human Rights (Commission) that EDC failed to timely elect to have an employment discrimination charge filed against it heard and decided in the Superior Court. Jurisdiction is pursuant to R.I.G.L. § 42-35-15 et seq.
 FACTS AND TRAVEL
On January 30, 1998, Alan N. Addison (Addison) filed a charge with the Commission against EDC alleging employment discrimination on the basis of race, color and age in violation of the Rhode Island Fair Employment Practices Act, Title 28,
Chapter 5 of the Rhode Island General Laws (RIFEPA). On June 5, 1998, EDC formally denied these allegations to the Commission. In its response to Addison's charges, EDC declared that it was represented by the law firm of Adler, Pollack Sheehan and that Robert P. Brooks, Esq. (Brooks) was the contact person for the case.
The Commission began its investigation into the charges and received information and documentation from both parties. On January 25, 2000, the Commission issued a Complaint and Notice of hearing pursuant to R.I.G.L. § 28-5-18. A Preliminary Investigative Conference took place on August 18, 2000 which was attended by, inter alia, both Brooks and Tom Schumpert (Schumpert), EDC's Executive Director. After the conference, the Commission sought and received additional information from the parties.
After the investigation was completed, the Commission, through its Preliminary Investigating Commissioner, found on December 22, 2000, probable cause to believe that the alleged discrimination had occurred and that EDC had violated RIFEPA. The parties were informed of the Commission's decision on December 27, 2000.
On January 5, 2001, the Commission notified EDC in writing that it had 30 days from receipt of notice, pursuant to R.I.G.L. § 28-5-24.1(b), to elect in writing to have the case heard and decided in the Rhode Island Superior Court. The notice stated that if EDC failed to notify the Commission of a decision to have the case heard in Superior Court, the Commission would continue to process the case. The January 5, 2001 notice was sent to EDC from the Commission in addition to the December 27, 2000 notice informing EDC of the Commission's initial decision regarding probable cause. The Commission sent copies of this notice to Brooks and Schumpert in their respective capacities as EDC's agents for service as well as to Attorney General Sheldon Whitehouse (Whitehouse). EDC did not, within the 30 day statutory period, elect to have the case heard in the Superior Court.
Accordingly, the Commission continued to process the case and attempted to resolve the matter pursuant to Rule 5.02 of the Commission's Rules and Regulations. The Commission held meetings between the parties that were attended by Brooks and Schumpert. After efforts to conciliate the case were unsuccessful, the Commission issued an Amended Complaint and Notice of Hearing pursuant to Rule 7.02 of its Rules and Regulations.
Discovery commenced amongst the parties in preparation for a hearing before the Commission. Throughout discovery, the Commission issued certain decisions with regard to Addison's Motion to Compel production of certain documents and his Motion for Protective Order in response to a notice of deposition and subpoena duces tecum issued by EDC.
On January 16, 2002, more than a year after the 30 day statutory period for election had expired, EDC notified the Commission of its election to have the case heard before the Superior Court. On January 17, 2002, the Commission received Addison's Objection to the EDC's Request for Election. EDC submitted a Restated Memorandum in support of its Election Request to the Commission on January 18, 2002. On January 25, 2002 the Commission informed EDC that its request was untimely and thus denied. Pursuant to R.I.G.L. § 42-35-15(a), EDC filed its appeal of the Commission's Election Decision with this Court on February 18, 2002.
 STANDARD OF REVIEW
EDC's appeal is before this Court pursuant to the Administrative Procedures Act, R.I.G.L. § 42-35-1 et seq.
R.I.G.L. § 42-35-15(a) states:
 "(a) Any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter. This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." R.I.G.L. § 42-35-15(a).
In this case, EDC's alleged waiver of a Superior Court trial is immediately reviewable because the issue of forum must be resolved before any final decision regarding Addison's claims against EDC is reached. In other words, this Court must decide whether the case will be moved to this Court or remain in front of the Commission before the merits of the case are addressed. Thus, waiting for a final agency order regarding Addison's discrimination claims ignores entirely the forum issue presently before this Court.
With respect to the role of the Superior Court in an administrative appeal, R.I.G.L. § 42-35-15(g) provides in relevant part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." R.I.G.L. § 42-35-15(g).
The Rhode Island Supreme Court has established that judicial review of an administrative agency decision is limited solely to questions of law.See Bunch v. Bd. Of Review, R.I. Dep't of Labor and Training, 690 A.2d 335, 337 (R.I. 1997) (citing St. Pius X Parish Corp. v. Murray, 557 A.2d 1214, 1218 (R.I. 1989); Powell v. Dep't of Employment Security Board ofReview, 447 A.2d 93, 95 (R.I. 1984)).
 DISCUSSION
The issue before this Court is whether the Commission's denial of EDC's (untimely) Election Request was proper. R.I.G.L. § 28-5-24.1(b) provides "respondents" the opportunity to elect to have matters before the Commission heard and decided in the Superior Court. That statute provides in relevant part:
 "As to cases pending before the commission July 8, 1999, in which a finding of probable cause has been made by the commission under § 28-5-18, or will be made in the future, the commission shall, within thirty (30) days of the findings of probable cause or within thirty (30) days after July 8, 1999, whichever is later, notify the respondent of the right to have the complaint heard and decided in the superior court. If within thirty (30) days of receipt of the notification by the respondent the respondent elects in writing to have the case heard in the superior court, the commission shall promptly issue a right to sue letter to the complainant and all proceedings before the commission shall terminate." R.I.G.L. § 28-5 24.1(b).
The thirty day time frame for election is clear from the face of the statute itself. In this case, EDC had thirty days from its receipt of the Commission's January 5, 2001 letter informing EDC of its right to so elect in which to make its election request to the Commission. Here, the facts indicate that EDC failed to make any election during the 30 day statutory period which commenced on January 5, 2001. EDC filed its Request for Election in January 2002, more than a year after the statutory period for election had expired. Thus, absent some valid legal excuse from strict compliance with the statutory mandate of R.I.G.L. § 28-5-24.1(b), EDC lost its right to elect to have this matter heard and decided before this Court.
 NULLUM TEMPUS
EDC argues that despite the statutory time limit generally applicable to election, it may invoke the doctrine of nullum tempus and thus be exempted from the 30 day election period. "Under the doctrine of nullum tempus, the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations, unless the statute specifically provides otherwise." State v. Lead Industries Association,Inc. et al., 2001 WL 345830 *12 (2001) (citing Guaranty Trust Co. v.United States, 304 U.S. 126, 132-133, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)) (underline added).
EDC asserts that it is protected by the doctrine of nullum tempus in this case because it is a governmental agency and thus a part of the sovereign which is exempted from the operation of statutes of limitations such as the 30 day election period in this case. EDC's argument with respect to this doctrine is unavailing because it ignores the fact that R.I.G.L. § 28-5-1 et seq., the relevant statute in this case, specifically includes within its definition of employer "the state and all its political subdivisions." R.I.G.L. § 28-5-6(7)(i). The statute specifically subjects all state agencies to its mandates. Thus, EDC, as an employer and respondent under RIFEPA, is bound by the 30 day election period prescribed in that statute.
 BEYOND THE SCOPE OF AUTHORITY
EDC further argues that the decision by it to waive the opportunity to have the case heard in this Court was improper because it was made by its agents or employees without authority to so do. EDC raises the doctrine of ultra vires, asserting that the decision to continue the case before the Commission, rather than exercise the right to a Superior Court trial, was not made by EDC's Board of Directors (Board), to which the legislature has expressly and exclusively vested the authority to run EDC. EDC, of course, claims that the right to make such decisions rests exclusively with its Board. EDC asserts that the acts of its Executive Director, Schumpert, and its staff cannot bind EDC with respect to its right to a Superior Court trial in this case.
This Court disagrees with EDC's ultra vires argument. Ultra vires
activities are those acts taken by a corporation which are outside of or beyond its corporate authority as defined in its corporate charter or by law. See 18B Am. Jur.2d Corporations § 2009 (1985 Ed.) (citing interalia, Central Transp. Co. v. Pullman's Palace Car Co., 139 U.S. 24
(1891)). The doctrine does not apply to actions taken by corporate agents or employees that are beyond their individual authority to act, as EDC asserts in this case.
EDC does not argue that the corporate entity did not have the requisite authority to elect whether or not to have this case heard in Superior Court. Rather, EDC claims that its Executive Director and other staff members did not have the individual authority to make this decision on EDC's behalf. In actuality, EDC's assertion is not an issue of ultravires activity but rather an issue of intra vires activity or action taken by corporate agents which is beyond their individual authority to act on behalf of the corporate entity. See McDermott v. Bear Film Co.,33 Cal.Rptr. 486, 489, 219 Ct.App.2d 607 (Cal.App. 3rd Dist. 1963) (defining "ultra vires" as an action that is beyond the purpose or power of a corporation but not an action which is performed in an unauthorized manner or without authority). Thus, this Court next addresses the issues of agency and the authority of an agent to act to bind a principal corporation.
EDC asserts that the decision to remain before the Commission in this matter was improper because it was made without proper authority of the Board. According to EDC, R.I.G.L. § 42-64-8(a)(1) requires that all decisions made on EDC's behalf are subject to the approval of its Board. EDC claims that in this case, not only did the Board not approve the election decision, but that it did not even have notice of its right to elect until December 17, 2001.[1]
This Court is not persuaded by EDC's argument with respect to the authority of its agents. R.I.G.L. § 42-64-8 et seq. grants EDC's Board sole authority to make corporate decisions. The statute reads in relevant part:
 "(a)(1) The powers of the corporation shall be vested in a board of directors . . .
 (h) Any action taken by the corporation under the provisions of this chapter may be authorized by vote at any regular or special meeting, and each vote shall take effect immediately.
 (i) The board of directors may designate from among its members an executive committee and one or more other committees each of which, to the extent authorized by the board of directors, shall have and may exercise all of the authority of the board of directors . . .
 (j) Any action required by this chapter to be taken at a meeting of the board of directors, or committee of the board of directors, may be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed before or after that action by all the directors, or all of the members of the committee, as the case may be." R.I.G.L. § 42-64-8(a)(1) and § 42-64-8(h)-(j).
Accordingly, the statute provides the procedural means by which EDC makes corporate decisions. The statute provides alternatives to the Board so that it may delegate its decision-making power to other corporate agents in certain instances within certain parameters.
This Court is not persuaded by EDC's classification of its waiver of its election right as a corporate action, thereby requiring Board approval pursuant to R.I.G.L. § 42-64-8 et seq. EDC claims that because the statutory procedure was not followed, the waiver is ineffective because none of the alternatives listed in the statutory section were taken. However, this Court finds that the statutory alternatives do not apply in this case because a waiver in this context does not constitute a corporate action, such as entering a contract or acknowledging a debt, which would require Board approval. Rather, the decision to waive a Superior Court trial in a civil matter is a procedural decision with regard to litigation which falls within the purview of Brooks as EDC's attorney of record.
In McLyman v. Miller, 161 A. 111 (R.I. 1932), the Rhode Island Supreme Court held that an attorney is an agent of a party for the purposes of the litigation for which he or she was engaged. See id. at 112. "By his employment, the attorney is authorized to take such steps in defending the action as he may deem legal, proper and necessary . . . ." See id. The Court found that waiving a jury trial falls within the scope of an attorney defending an action as he or she sees appropriate. Id. Further, it is a fundamental principle of agency law that an agent has the authority to "do all of those acts, which are reasonably necessary and proper in order to carry into effect the main authority conferred."Fletcher Cyclopedia of the Law of Private Corporations § 440 (1998).
 "The doctrine of incidental [or implied] authority is based upon the presumption that every agency carries with it all the powers necessary and proper to effectuate the purpose for which it was created. So, it is sufficient to show that the acts done were within the authority granted, and it is not necessary to show authority with respect to each irregular act. When corporate agents act within the scope of their authority, their acts are the acts of the corporation, for which the corporation is liable both civilly and criminally." See id (brackets added).
Although the Rhode Island Supreme Court has not directly addressed the doctrine of implied authority, the Supreme Court of Oregon in Wiggins v.Barrett Associates, Inc., 295 Or. 679, 669 P.2d 1132 (1982) defines the concept as the authority to do those things that are reasonably necessary for carrying out the task for which an agent has express authority to complete. See Wiggins v. Barrett Associates, Inc., 295 Ore. at 688. TheWiggins court characterizes implied authority as a component of actual authority, rather than an independent power. See id.
In the instant case, the waiver in question was effective because there was no need for the Board's approval as Brooks had the authority to waive a jury trial for two reasons. First, in accordance with the Rhode Island Supreme Court's holding in McLyman, as EDC's attorney of record in this case, Brooks is EDC's agent for the purpose of this litigation, and as such, it was within his scope of authority to decide to waive a Superior Court trial and continue the proceedings before the Commission. Second, under the doctrine of implied authority, Brooks has the authority to waive a Superior Court trial because making procedural decisions with regard to litigation strategy is reasonably necessary to facilitate his representation of EDC in this matter.
Although it is clear from the facts in this case that both Schumpert and Brooks are agents of EDC, albeit in specific capacities with certain powers, this Court will briefly address the issue of apparent authority as it applies in this case. With respect to third parties, EDC will be bound by the acts of Schumpert and Brooks under the doctrine of apparent authority. It is well-settled under this doctrine that a principal corporation will be bound by the acts of its agents as long as there is evidence to indicate that third parties would reasonably rely on that agent's authority to act on the corporation's behalf.
 "Apparent or ostensible authority is authority the principal knowingly permits the agent to exercise or which the principal holds his or her agent out as possessing, although it had not actually been granted to the agent. . . . An agent also has apparent authority when the acts or declarations of the principal give the agent the appearance of possessing authority." Victoria A. Braucher, Thomas Evans, and Gail O'Gradney, Fletcher Cyclopedia of the Law of Private Corporations § 449 (1998).
In this case, the facts indicate Schumpert and Brooks participated in the majority of the proceedings surrounding this case. For instance, both Schumpert and Brooks were present and participated in the Preliminary Investigative Conference on August 18, 2000. On January 2, 2001, both men, as EDC's agents for service, received copies of the letter notifying EDC of its right to elect to have the case heard in Superior Court. After EDC apparently waived its right to transfer the case, Schumpert and Brooks continued to participate in the subsequent proceedings relevant to this case. The pair attended meetings held by the Commission pursuant to Rule 5.02 of its Rules and Regulations in an attempt to conciliate the case.
The facts illustrate that Schumpert and Brooks were extensively involved in this case at nearly every step of the way. This Court cannot realistically conclude that EDC had no knowledge of Schumpert and Brooks's participation in this matter and their actions on EDC's behalf. It was EDC's responsibility to deny Schumpert and Brooks's authority if it did not intend to be bound by their actions. There are no facts that demonstrate that EDC, at any time, made any efforts to dispel the apparent authority of either individual. As a result, it is reasonable to conclude that a third party, such as the Commission, would believe that EDC intended Schumpert and Brooks to have the authority to act to bind the corporation as a whole.
 PROPER NOTICE
EDC further argues that it did not receive proper notice of its right to elect to have a Superior Court trial. However, this argument fails as well. The United States Supreme Court in Perkins v. Benguet ConsolidatedMining Co., 342 U.S. 437, 439-40, 72 S.Ct. 413, 415, 96 L.Ed. 495, reh'gdenied, 343 U.S. 917 (1952) held that notice to a chief executive officer of a corporation constituted notice to the entire corporation.
 "The general rule is well established that a corporation is charged with constructive knowledge, regardless of its actual knowledge, of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of employment within the scope of his or her authority, even though the officer or agent does not in fact communicate the knowledge to the corporation. . . . [T]his rule rests upon the presumption that the agent will communicate to the corporation the facts learned by the agent, as it is the agent's duty to do it, and whether the agent performs such duty or not, the corporation is bound." United States v. Bank of New England, N.A., 821 F.2d 844 (1st Cir.), cert. denied, 484 U.S. 943 (1987).
Sufficient notice of the 30 day election period was received by EDC, a corporate entity, on January 5, 2001, nearly one year before it claims to have received notice, when it received notice from the Commission of its election right in this matter. The Commission made its initial ruling in this case on December 27, 2000. That ruling stated that the Commission, after completion of an investigation in the matter, found that there was probable cause to believe that Addison had in fact been discriminated against by EDC in violation of RIFEPA and that EDC had 30 days to elect whether to have the case heard and decided in Superior Court or to continue in front of the Commission. Nine days later on January 5, 2001, EDC received an additional notice from the Commission regarding its election right. That notice was received by Schumpert, EDC's chief executive officer pursuant to R.I.G.L. § 42-64-8(d) and by Brooks, EDC's attorney of record or legal agent of the corporation.
The election right at issue in this case was created through statutory amendment to RIFEPA following the Rhode Island Supreme Court's decision in FUD's, Inc. v. State of Rhode Island Commission for Human Rights,727 A.2d 692 (R.I. 1999). The Rhode Island Supreme Court held that:
 "the [Fair Employment Practices Act's] statutory procedure for adjudicating employment discrimination charges is unconstitutional because it deprives employers of the right to elect either a hearing before the Commission or a Superior Court jury trial." 727 A.2d at 698.
It is clear from the facts in this case that on January 5, 2001, EDC received notice of its right to elect to have this case heard before the Superior Court pursuant to R.I.G.L. § 28-5-24.1(b). At that time, EDC had 30 days under RIFEPA for its Board to meet and decide whether to elect to have the case heard before this Court. EDC never elected, either through its Board or through any other agent, to have the case transferred from the Commission to this Court.
On January 5, 2001, the Commission gave EDC sufficient notice of its election right through Schumpert and Brooks. At that point, it became Schumpert and Brooks' responsibility as corporate agents to convey that notice to the Board pursuant to EDC's internal procedure for decision-making of this nature. Their failure to so do is the responsibility of EDC as a whole. This Court further notes that the facts indicate that both Schempert and Brooks continued to participate in proceedings before the Commission in connection with this matter long after the 30 day election period expired.
The failure of EDC to follow its own procedure with regard to decision-making of this nature is not a notice issue, as EDC asserts, but rather an internal problem for which EDC must bear responsibility. EDC cannot now get around its own waiver of its right to elect by claiming it did not have proper notice from the Commission or indeed from its own Executive Director and counsel of that right.
Conclusively, EDC, as well as its Board, had, through Schumpert and Brooks, sufficient notice of the 30 day election period. For whatever reason, EDC allowed its election right to lapse. It was EDC's responsibility as a corporate entity, not the Commission's, to assure that EDC's internal procedures for decision-making of this nature were properly carried out. If neither Schumpert nor Brooks had the authority to waive the right to elect as EDC asserts, then its Board had or should have had the opportunity to address this problem and assure that the proper party carried out the election decision.
After careful consideration of the arguments presented by the parties in this case, this Court affirms the decision of the Commission finding that EDC had sufficient notice of the 30 day election period and failed to timely elect to have this matter heard and decided before the Superior Court. Counsel for the Commission shall prepare and present an order and judgment consistent herewith to be settled on adequate notice to counsel for the other parties.
[1] EDC maintains that the first time it was made aware of the Addison matter was at a Board meeting on December 17, 2001. At that time, the Board was presented with a summary of the matter which it claims was the first time it received any information pertaining to this case.