## IN RE THE CONDEMNATION OF CERTAIN LAND FOR A NEW STATE HOUSE.

Pub. Laws R. I. cap. 1201, of May 24, 1893, created a Board of State House Commissioners to select and acquire a site for a new State House by purchase or by condemnation, and for the purpose of acquiring land by condemnation, § 2 of the act gave the board all the powers of condemnation conferred upon towns for the purpose of taking land for a water supply by Pub. Laws R. I. cap. 285, and provided as follows : "and in case said board shall so take any land for the purposes of this act it shall proceed in all matters in relation to such land as provided in said chapter 285 in the case of land taken under its provisions, and owners of land so taken shall have the same rights of appeal from the awards of said board, and rights of jury trial thereon, as are secured to owners of land taken under the provisions of said chapter 285 by its provisions."

Pub. Laws R. I. cap. 285, as amended by Pub. Laws cap. 1224, provided for the appointment by the Common Pleas Division of the Supreme Court of commissioners to appraise the damages sustained by any person whose land was taken, prescribed the method of procedure, and then provided that "any person or party aggrieved by any award of damages by the said commissioners may claim a jury trial upon any item of damages thereby awarded, and may file his claim for such trial," etc.

*Held*, that the words "said board," as used in Pub. Laws cap. 1201, § 2, in giving land owners the rights of appeal "from the awards of said board," must be construed as referring to the Appraisal Commissioners by whom damages were to be appraised and awarded under the provisions of Pub. Laws cap. 285, otherwise the words would be meaningless, since the Board of State House Commissioners has no power to make awards.

*Held*, further, that the State was not entitled to jury trials on appeals from the awards of the Appraisal Commissioners under Pub. Laws R. I. cap. 285 and cap. 1201, the general language of cap. 285, § 6, giving the right of appeal to "any person or party aggrieved" being restricted by Pub. Laws cap. 1201, § 2, which gives the right of appeal and of jury trial in express terms to land owners alone.

Although it is competent for the General Assembly to grant to the State the right of trial by jury in condemnation proceedings, there is no constitutional necessity which requires such trial to be assured to the State in order to make the proceedings valid.

PETITION of the Board of State House Commissioners for a new trial of motions to dismiss claims made by the State for jury trial in proceedings under Pub. Laws R. I. cap. 285, and cap. 1201.

*November* 23, 1895. ROGERS, J. This is a petition by the Board of State House Commissioners, for and in behalf of the State, for a new trial of motions to dismiss the State's claims for jury trials upon damages awarded the owners of land by Appraisal Commissioners in certain condemnation proceedings.

A tract of land in the city of Providence was condemned as a site for the proposed new State House under the provisions of Pub. Laws R. I. cap. 1201, passed May 24, 1893, entitled "An Act to provide for the creation of a Board of State House Commissioners, to define their duties and to provide for the issuance of the bonds of the State to an amount not exceeding $1,500,000."

Section 1, of said chapter, provided that certain persons therein named "are," in the language of the act, "hereby constituted a board of state house commissioners, who shall perform the duties specified in this act; they shall hold office for a sufficient time to accomplish the purposes of this act, and shall serve without compensation. Any vacancies in said board shall be filled by the governor, with the consent of the senate. Five members of the commission shall constitute a quorum."

Section 2, of said chapter, is as follows:—

"Said board shall at once proceed to select and acquire a site for a new state house, either under the provisions of chapter 913 of the Public Laws or by purchase or by condemnation, as said board may determine, and to erect thereon a new state house substantially in accordance with the plan accompanying the report of the state house commission made to the general assembly at its January Session, 1892, and recommended by said commission. The said site shall be acquired in the name of the State of Rhode Island, and for the purpose of acquiring land by condemnation for said site said board is hereby given all the powers of condemnation con-

ferred upon towns in certain cases for the purpose of taking land and property for a water supply by chapter 285 of the Public Laws, and in case said board shall so take any land for the purposes of this act it shall proceed in all matters in relation to such land as provided in said chapter 285 in the . case of land taken under its provisions, and owners of land so taken shall have the same rights of appeal from the awards of said board, and rights of jury trial thereon, as are secured to owners of land taken under the provisions of said chapter 285 by its provisions."

The subsequent provisions of said chapter 1201 authorized the Board of State House Commissioners to make, on behalf of the State all contracts for the construction of said state house, and the furnishing thereof, and for grading and putting into suitable condition the grounds surrounding the same, and provided how it should be done, and how the money to meet the expenses incurred under said chapter 1201 should be raised, and how the bills audited by said Board of State House Commissioners were to be paid.

Said chapter 285 provided when and under what circumstances certain towns, persons or corporations, for the purpose of supplying towns with water, may take, condemn, hold, use and permanently appropriate any land, water, rights of water and of way, necessary and proper to be used in furnishing or enlarging any such water supply ; and it also provided for the methods of procedure therefor, which included the filing in the clerk's office of the Common Pleas Division of the Supreme Court in the county where the land to be taken was located, of a certificate of taking the property, estate or right of property described therein, with a list of the owners thereof, and the appointment by said Common Pleas Division, after due notice, of three suitable persons to be commissioners to appraise the damages sustained by any person whose property, estate or rights of property shall have been taken, and how said commissioners were to proceed, and for the payment for the land so taken.

Section 6 of chapter 285, as amended by Pub. Laws R. I. cap. 1224, cap. 2, § 4, reads as follows :—

"Upon the payment of the fees provided in the preceding section, the clerk of the said common pleas division of the supreme court shall open the report of the said commissioners, and the same may be examined by any person interested therein, and any person or party aggrieved by any award of damages by the said commissioners may claim a jury trial upon any item of damages thereby awarded, and may file his claim for such trial at any time within three months from the opening of such report; and such claim shall stand for trial by jury upon a proper issue based upon such claim, as other cases upon the docket of such court, and shall be tried therein in every respect as other cases are there tried, including the right to except to rulings and to apply for new trials for cause; and execution may be awarded thereon as in other cases; but if the party claiming the jury trial shall not therein obtain an award for damages more favorable to him than that given by the commissioners, he shall pay costs to the adverse party."

Within three months from the opening of the report made by the Commissioners of Appraisal duly appointed in the proceedings to condemn the state house site, the Board of State House Commissioners for and in behalf of the State claimed jury trials upon various items of damage thereby awarded, whereupon, upon motion of the persons that at the time of the condemnation had owned the land so taken and to whom the awards for damages appealed from by the State had been made, the claims of the State for jury trials were dismissed by the Common Pleas Division, and the matter comes before us on the State's petition for a new trial of that motion, the question involved being whether the State under said acts is entitled to jury trials as claimed.

The State through its Board of State House Commissioners, contends that it is a party aggrieved by the award of the Appraisal Commissioners, and that said chapter 285, § 6, and every part of said § 6, applies to the proceedings to condemn land for a state house site, and therefore that the State by express legislation has the right to claim jury trials.

The land owners deny on various grounds, such right and,

among others, contend that the words "*said board*" when last used in chapter 1201, § 2, refer to the Appraisal Commissioners provided for in chapter 285, and not to the Board of State House Commissioners ; and that the right to claim a jury trial is given only to the owners of land taken, and not to the State.

We think the words "*any person or party aggrieved*" contained in chapter 285, § 6, are broad enough to include the State, and that the Board of State House Commissioners would have power to act for and in behalf of the State in claiming a jury trial if the legislation relating to condemning land for a state house site intended to confer upon the State the right of trial by jury, and that intent can be ascertained by legal construction.    We see no inherent difficulty or impropriety in the law-making power granting a jury trial to the State in condemnation proceedings, if dissatisfied with an award of the Appraisal Commissioners.    A State may sue in its own courts, but it cannot be sued therein unless there is some statute giving the court jurisdiction in express terms.    23 Amer. & Eng. Encyc. of Law, 80, note 1, and cases cited.    The State is continually suing in its own courts, and recognizances running to the State are being constantly sued there in the name and for the benefit of the State.    The official bonds required of certain officers, such as General Treasurer, State Auditor, Warden of State Prison, etc., are made to the State and would be suable in its name in the State courts.    Though persons to be eligible as jurors must be taxpayers and therefore, in a sense, having an interest in the State, yet such interest would not incapacitate jurors from sitting on a case in which the State was a party even before May 25, 1895, the date of passage of Pub. Laws R. I. cap. 1389.    The State is the government.    Courts are created by it, and judges and jurors hold their positions under it and receive pay from it for their services.    A judge or a juror receiving pay for his services from an ordinary party would be unfitted to sit where such party was interested.    Not so, however, in the case of the State, for the relations of citizens to it, be they judges or jurors, are funda-

mental, and, notwithstanding such relations, the State, as we have seen, can sue in its own courts. To hold otherwise would be to paralyze courts and to disintegrate government. The contention of the land owners that the State could not have been granted the right to claim a jury trial in condemnation proceedings seems to us utterly untenable.

But while right to a jury trial might have been granted to the State by the law-making power, the crucial question in this case is—Was such right actually granted in the legislation referred to? Was it the intention of the statute to grant such right?—for the great object of the maxims of interpretation is to discover the true intention of the law. The intention of the makers of a statute is sometimes to be collected from the cause or necessity of making a statute, and at other times from the circumstances. Whenever it can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute. The real intention, when accurately ascertained, will always prevail over the literal sense of terms. A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of a statute is not within the statute unless it is within the intention of the makers. Bac. Abr. Statute, 1, §§ 5, 10 ; 1 Kent Com. 461, 468 ; *People v. Utica Ins. Co.*, 15 Johns. 358, 361 ; *Holmes v. Carley*, 31 N. Y. 289, 290. In the words of Chief Justice Durfee in *Dawley v. Probate Court*, 16 R. I. 696, "We always like in construing a statute, to take the words literally, assuming that the General Assembly have chosen such as readily express their intent. This cannot always be done, for it sometimes happens that words have been used that taken literally are inconsistent with the predominating purpose. The cases are numerous in which the literal meaning of words and phrases has been restrained or extended by construction to suit the legislative intent." See also *State v. Town Council of South Kingstown*, 18 R. I. 258.

The object or purpose of chapter 1201 was to enable the

State to acquire land for a site and to erect thereon a state house. The land might be acquired in various ways, and one was by condemnation. Chapter 1201, instead of stating at length, in language to be found within its own limits, the manner of proceeding in condemning a state house site, adopted certain provisions of chapter 285 by brief reference thereto, and therein arises the ambiguity which the court is called upon to construe. Such a method of drafting acts is objectionable, and in regard to the state house legislation the language as well as the method is lacking in precision. The provisions of chapter 285 adopted by chapter 1201 are not clearly defined, for no sections or parts of sections are referred to by their numbers but only by descriptions of their matter, and we have to look to chapter 1201 for the limitations of adoption of parts of chapter 285. If chapter 1201, § 2, had concluded with these words found therein, viz.—"and in case said board shall so take any land for the purposes of this act it shall proceed in all matters in relation to such land as provided in said chapter 285 in the case of land taken under its provisions,"—we should have found little if any difficulty in saying that the law makers intended to give to the State as well as to the land owners the right of trial by jury as provided for in chapter 285, § 6, if aggrieved by the award of the Appraisal Commissioners. But chapter 1201, § 2, did not conclude with the words just quoted, but continued on as follows, viz.—"and owners of land so taken shall have the same rights of appeal from the awards of said board, and rights of jury trial thereon, as are secured to owners of land taken under the provisions of said chapter 285 by its provisions." If the words last above quoted refer to a jury trial for the land owners on appeal from the award of the Appraisal Commissioners, then the query arises as to how broad a construction the law makers put upon the words of chapter 1201, § 2, referring to chapter 285 ; for if the provisions of chapter 285, § 6, adopted by chapter 1201, gave both sides to the condemnation proceedings a jury trial, what necessity would there be for chapter 1201, § 2, giving the land owners alone a jury trial in express terms, and why expressly refer

to chapter 285 in such a limited gift?   The State House
Commissioners insist that the words of chapter 1201, § 2, last
above quoted, refer to awards made by themselves, i. e. by
said Board of State House Commissioners, whereas the land
owners contend that they refer to the awards of the Ap-
praisal Commissioners.   Taking the words "*said board*,"
when last used in chapter 1201, § 2, according to their strict
technical meaning and the grammatical construction of the
sentence containing them, they refer to the Board of State
House Commissioners, for the same words are used five times
in said section, and the first four times they were unques-
tionably intended by the law makers to refer to said Board of
State House Commissioners.   But if the words "*said board*,"
when last used in chapter 1201, § 2, are construed to mean
the Board of State House Commissioners, all conceivable
meaning of the words is taken away, for that board has no
power to make awards to the land owners, and it is more-
over representing the State adversely to the land owners.
Immediately preceding the words "*said board*," when last
used in chapter 1201, § 2, and subsequent to the use of the
same words when next thereinbefore used in said connection,
there is a reference to said chapter 285 ; and another refer-
ence to the same chapter also immediately follows the words
"*said board*," when last used in said chapter 1201, § 2, in
referring to the kind of appeal and jury trial intended.   An
examination of chapter 285, § 6, discloses that the appeal
therein referred to is an appeal from the award of the Ap-
praisal Commissioners ; and as appraisal commissioners must
necessarily be appointed in the condemnation of said state
house site, it seems to us that the legislators intended that
the words "*said board*," when last used in chapter 1201, §
2, should refer to the Appraisal Commissioners and not to the
State House Commissioners.   It is true that nowhere in said
chapter 285 are the Appraisal Commissioners called *a board*,
but it is common practice to speak of commissioners collectively
as *a board*, and in this manner we think the legislators spoke
of the Appraisal Commissioners.

Having, in the body of chapter 1201, § 2, given to the

owners of land the right to appeal from, and of jury trial on, the award of the Appraisal Commissioners, we think the law makers did not intend to give it to the State also, for *inclusio unius est exclusio alterius*,—unless indeed such gift of jury trial to the State in condemnation proceedings is a constitutional necessity, for it seems to us the paramount purpose of the legislation was to confer an effective method of condemning land for a state house site, and no method not constitutional could be effective.

Is there, then, any constitutional necessity for assuring a jury trial to the State in order to make the power to condemn complete? The constitution of Rhode Island, Art. 1, provides as follows, viz: "Section 15. The right of trial by jury shall remain inviolate." At the time of the adoption of the constitution of Rhode Island in 1842, did the State possess the right of trial by jury in condemnation proceedings? If it did, then it must remain inviolate. The only general law relating to condemnation of real estate, in force in 1842, was "An Act for laying out highways," Pub. Laws R. I. Rev. of 1822, 286, by §§ 2 and 3 of which it was provided how town councils might lay out highways and driftways. Sec. 4 thereof provided that if any person through whose land such highway or driftway is laid, shall be aggrieved by the doings of the committee or town council in laying out such highway or driftway or appraising the damage as provided for in the act, he shall have liberty to appeal to the next court of general sessions of the peace to be holden for the county, but there was no provision for allowing jury trial to any other party to the proceedings under said §§ 3 and 4. Turning to private acts conferring power of condemnation, we find that such power was for a long term of years, preceding the adoption of the constitution, conferred largely, if not chiefly, upon two classes of corporations, viz., railroad corporations and turnpike corporations. In condemnation proceedings under railroad charters the right of appeal and trial by jury from the award of the appraisal commissioners was usually, if not always, conferred upon either party aggrieved, i. e. upon the corporation and land owners, alike, in clear and unmistak-

able terms. In condemnation proceedings under turnpike charters, however, the right of appeal and trial by jury from the award of the appraisal committee appointed in the charter, they being the equivalent of appraisal commissioners appointed by the court in the later practice, was, in a very large majority of cases, conferred only upon the persons whose land was taken, the ordinary language used in such charters upon that point being as follows, viz: "That certain persons," naming them, "be and they hereby are appointed a committee to locate and establish said road, and to agree with the proprietors if they can; and if not, to appraise the damages (if any) that any person or persons may sustain through whose land said road may pass; and the said Committee shall make a return of their proceedings in laying out said road and appraising the damages aforesaid, into the clerk's office of the court of common pleas in the county of Providence, as soon as conveniently may be after said appraisement shall have been made; and if any person or persons shall be aggrieved by said appraisement made by said committee, he or they may apply to said court of common pleas at the next term thereof after the appraisement shall have been returned as aforesaid, and may have the damages assessed by a jury in said court, and a verdict of such jury when established by said court shall be final; provided always, that if the report of the committee shall be confirmed, or the amount of damages lessened by the jury, the person or persons applying for such jury trial, shall pay all lawful costs; and if the amount of damages shall be increased, the costs shall be paid by said corporation." Foster Valley Turnpike Company's charter, § 15, R. I. Acts and Resolves, June, 1830, 39. See also Stone Bridge and Fall River Turnpike Corp. charter, § 3, *Id.* Jan. 1838, 74; Worcester Turnpike Co.'s charter, § 3, *Id.* Jan. 1836, 52; Woonsocket Falls Turnpike Co.'s charter, § 3, *Id.* Jan. 1830, 23; Providence and Warren Turnpike Co.'s charter, § 3, *Id.* Jan. 1827, 7; and Pawtucket and Providence East Turnpike Co.'s charter, § 3, *Id.* Oct. 25, 1825, 55. While the language just quoted seems to us to confer the right of trial by jury unquestion-

ably upon the land owners merely, yet there are various cases where the intent so to do is expressed in still more unmistakable terms; thus in an amendment to the Providence and Norwich City Turnpike Co.'s charter, R. I. Acts and Resolves, June, 1835, 27, the language is—"and if any person or persons shall be aggrieved by said appraisement made by said committee, he, she or they may apply to the court of common pleas in the county in which his, her or their estate lies, at the next term thereof after said appraisement shall have been made as aforesaid, and may have the damages assessed by a jury in said court," and then proceeding on in the same language as in the last preceding quotation. In an amendment to the charter of the Providence and Douglas Turnpike Corporation, § 2, R. I. Acts and Resolves, May, 1822, 41, the provision as to jury trial is that "any proprietor of the said land, who has not been agreed with or satisfied as aforesaid may appeal to the next Court of Common Pleas for the said county of Providence, after said report shall have been returned as aforesaid, and have his damages assessed by a jury in said court," with like provisions as to costs as in the other cases hereinbefore referred to. In the act relating to the Turnpike Road from Wickford to Connecticut the right of trial by jury is limited to the owners of land who may be aggrieved, R. I. Acts and Resolves, Feb. 1807, 17, and in that relating to the Smithfield Turnpike Road the right to appeal and trial by jury is reserved alone to "said landholders" these words referring to the individuals through whose land the road may pass. R. I. Acts and Resolves, Feb. 1805, 29. It is apparent that for forty years at least prior to the adoption of the constitution the party in whose favor the power of condemnation was exercised, was not uniformly granted the right of trial by jury, and this seems to us to be conclusive that there is no constitutional necessity requiring such party to have a jury trial. The State stands in no better position, certainly, as to the right of trial by jury, than would any other party in whose favor condemnation power is exercised; indeed, it might be questioned if it stood as well, for being the law making

power it might be urged with more or less force that it might through its law makers waive the right of jury trial even if it had it constitutionally ; but a consideration and determination of that point, in the present inquiry, is not necessary.

Of course the provision in the Constitution of the United States, Art. VII. of the amendments, as to jury trial, has no relevancy here, for even if this case came within the language of that amendment it is well settled that that amendment, like all the rest of the first ten amendments, is intended solely as a limitation on the exercise of power by the government of the United States, and is not applicable to the legislation of the States.  *The Liquors of Fizpatrick,* 16 R. I. 60, 63 ; *State* v. *Brown & Sharpe Mfg. Co.,* 18 R. I. 16, and cases cited.

Our opinion is that said chapter 1201 confers no right of jury trial upon the State in the condemnation proceedings therein provided for, and that the Common Pleas Division did not err in dismissing the State's claim for jury trials thereunder.

Petitions for new trial denied and dismissed.  Case remanded to the Common Pleas Division for further proceedings.

*Edward C. Dubois,* Attorney General, *& Arnold Green,* for Board of State House Commissioners.

*James Tillinghast, James M. Ripley, Warren R. Perce, Amasa M. Eaton, Richard B. Comstock & Rathbone Gardner,* for different persons interested, contra.