DECISION
Before this Court is Brookenick Development Company's ("Brookenick's") Amended Motion for Injunctive Relief. In response, the Town of Cumberland ("Town"), by and through Thomas Bruce III, the Town's Finance Director and Treasurer, and Eugene Jeffers, the Town's Director of Public Works, contends that granting this equitable remedy will deprive the Town of its right to have a jury decide all of the factual issues of Brookenick's claims. Brookenick disputes the Town's right to a jury trial. Jurisdiction is pursuant to Super. R. Civ. P. 38.
 Facts and Travel
On March 21, 2008, Brookenick Development Company, LLC filed a complaint against the Town of Cumberland ("Town"), by and through Thomas Bruce III, the Town's Finance Director and Treasurer, and Eugene Jeffers, the Town's Director of Public Works. Brookenick alleges that the Town dispensed, discharged, and deposited trash and other solid waste on Brookenick's property ("Property"), identified as Assessor's Plat 55, Lot 2 on Old Albion Road in Cumberland, Rhode Island. *Page 2 
Specifically, Brookenick's complaint alleges that it obtained Master Plan approval for a twenty-one lot subdivision at a November 29, 2006 Cumberland Planning Board meeting, and such approval was extended to December 19, 2008. Brookenick asserts that during the hearing and review of the Master Plan, the Planning Board requested that Brookenick consult with the Rhode Island Department of Environmental Management ("DEM") and conduct tests to determine whether the Town's abandoned landfill encroached on the Property. Brookenick further alleges that during the testing, it was discovered that Old Albion Road and the Property contain waste as deep as thirteen feet, making the property inaccessible and unsuitable for development.
As a result, Brookenick asserts five counts against the Town. Brookenick's first count of inverse condemnation alleges that the Town's depositing of waste on the Property and Old Albion Road is a taking without just compensation in violation of article 1, section 16 of the Rhode Island Constitution. Brookenick's second count, alleging a violation of its substantive and procedural due process rights, avers that the Town's action in collecting, discharging, and depositing the trash and solid waste onto the Property is not rationally related to a legitimate government interest and is an abuse of government power in violation of article 1, section 2 of the Rhode Island Constitution. Brookenick's third count, continuous trespass, alleges that the Town knowingly and intentionally encroached on the Property without Brookenick's consent, permission, authority, or license. Pursuant to each of these counts Brookenick requests a declaration, pursuant to G.L. 1956 § 9-30-1 et seq., that the Town is liable and prays for an award of damages[1] as compensation for the loss of all economic beneficial use of the Property, lost *Page 3 
use of the Property, and lost business opportunity and expected business advantage. With each of these counts, Brookenick also seeks preliminary and permanent injunctive relief[2] preventing the Town from continuing to discharge waste onto the Property and mandating the removal of the waste and the restoration of the Property to a condition suitable for residential development.[3] In its answer, the Town requested a jury trial.
On November 5, 2008, Brookenick filed an amended motion for injunctive relief pursuant to Rule 65 of the Superior Court Rules of Civil Procedure. The motion seeks an order from this Court requiring the Town to remove all trash, garbage, and industrial waste from the Property and Old Albion Road in accordance with DEM Rules and Regulations and "forever prohibiting" the Town from trespassing on Brookenick's Property and Old Albion Road. It also requests an order mandating that the Town obtain necessary approvals, licenses, or permits from the DEM to remove the trash, garbage, and waste and an order requiring the Town to fill in the area of the Property and Old Albion Road from which trash, garbage, and waste have been removed so that it can be developed and used for residential purposes.[4]
On December 1, 2008, the Town objected to Brookenick's amended motion for injunctive relief by filing a memorandum in support of its claim for a jury trial. The Town argues that if this Court were to grant the injunctive relief requested by Brookenick, Brookenick's legal claims would effectively be decided without the requisite jury, save for a damages determination. The Town requests that prior to this Court's *Page 4 
consideration of injunctive relief, a jury decide the factual issues of Brookenick's legal claims. On December 10, 2008, Brookenick filed a reply, arguing that under Rhode Island law a municipality does not have a right to a jury trial and that Brookenick is entitled to equitable relief under the claims alleged.
 Law and Analysis
Our Supreme Court has established a framework for determining whether a right to a jury trial exists. See Fud's,Inc. v. State, 727 A.2d 692 (R.I. 1999). Our Supreme Court's analysis stems from article 1, section 15 of the Rhode Island Constitution, which provides that "[t]he right of trial by jury shall remain inviolate." See also
Super. R. Civ. P. 38(a) (providing that "[t]he right of trial by jury as declared by Article I, Section 15 of the constitution of this state or as given by a statute shall be preserved to the parties inviolate[]"). In Fud's, our Supreme Court stated that the right to a jury trial "must remain available to litigants in any type of legal action which was triable before a jury in 1843, the year when Rhode Island's first constitution became effective. That constitution included the same language as is now contained in article 1, section 15, of the current constitution."Id. at 695 (citing Egidio DiPardo Sons,Inc. v. Lauzon, 708 A.2d 165, 171 (R.I. 1998); Bendick v.Cambio, 558 A.2d 941, 943-44 (R.I. 1989)); seeDiPardo, 708 A.2d at 171 (stating that the "constitutional right to have issues of fact determined by a jury is preserved as it existed at common law at the time of the adoption of our original constitution in 1842, which became operative on May 2, 1843[]" (citations omitted)). This Court's determination of whether a right to a jury trial exists requires consideration of two issues. It must ask:
 whether the particular cause of action or any analogous claim would have been triable to a jury in 1843. [It] also *Page 5 
tr[ies] to assay whether the type of relief available for the cause of action is legal or equitable. Indeed, this available-relief analysis is "`[m]ore important' than finding a precisely analogous common-law cause of action in determining whether" article 1, section 15, mandates the opportunity for a jury trial. Fud's, 727 A.2d at 695 (citing Tull v. United States, 481 U.S. 412, 421 (1987) (quoting Curtis v. Loether, 415 U.S. 189, 196 (1974)).
Regarding the latter consideration, our Supreme Court acknowledged that compensatory and punitive damages are traditional forms of legal relief.Id. at 696 (citing Curtis, 415 U.S. at 195-96). TheFud's Court concluded that the employment discrimination action at issue, filed pursuant to the Fair Employment Practices Act (FEPA), more closely resembled a common law tort or contract action than any equitable cause of action. Id. at 697. Our Supreme Court held:
 Because we conclude that an important and potentially substantial component of the statutory relief available here is legal in nature and that the cause of action itself is more analogous to an action triable before a jury in an 1843 court of law than to any equitable cause of action, we conclude that a FEPA action triggers employers' rights to a jury trial. Consequently, FEPA's deprivation of that right to a jury trial is unconstitutional. Id.
The Town argues that Brookenick's inverse condemnation, due process, and continuous trespass claims are legal claims entitling it to a jury trial. This Court notes that in addition to the injunctive relief Brookenick seeks for each of these claims, Brookenick also requests damages as compensation for the loss of all economic beneficial use of the Property, lost use of the Property, and lost business opportunity and expected business advantage. These damages are not merely incidental to the injunctive relief sought.See Fud's, 727 A.2d at 697. This Court finds that praying for compensatory damages, which could have a "significant financial impact" on the Town, *Page 6 
"bears more similarity to an action at law than to an equitable cause of action." Id. (citation omitted); see 8 James WM. Moore, Moore's FederalPractice, § 38.31[5][b][i] at 84 (3d ed. 2008) (stating that "[w]hen money damages are sought in addition to injunctive relief, a jury trial will ordinarily be available on the damages claim[]" (footnote omitted)). Further, our Supreme Court has concluded that damages are an available form of relief for the claims at issue. For example, in Annicelli v. Town ofSouth Kingstown, 463 A.2d 133, 135 (R.I. 1983), our Supreme Court found that the plaintiff had "established an action of inverse condemnation against the town and thus must be compensated for a constructive `taking' of her property." Regarding trespass, our Supreme Court stated, "In an action of trespass for damages to real or personal property, compensation does not consist merely in such a sum of money as will repair or replace the injury done, but includes also the damages for the violation of the right of property."Whipple v. Wanskuck Co. 12 R.I. 321, 323 (1879); seealso
75 Am. Jur. 2d Trespass § 91 at 92 (2007) (stating that "[f]rom every unlawful entry, or every direct invasion of the person or property of another, the law infers some damage and a plaintiff may also assert a claim for whatever damages the facts may lawfully warrant[]") (footnotes omitted).
Regarding the historical treatment of inverse condemnation, "[a]n inverse condemnation suit is considered an action at law. . . ." 9 Charles Alan Wright et al., Federal Practice andProcedure § 2316 at 195 (3d ed. 2008) (footnote omitted). Our Supreme Court has explained:
 When all beneficial use of property is deprived by governmental restrictions, there is no question that an unconstitutional taking can occur even in the absence of a physical entry. . . . In such circumstances, an action in *Page 7 
inverse condemnation lies because it permits recovery against a governmental entity that takes the property in fact without formally exercising the power of eminent domain. Annicelli, 463 A.2d at 139.
See R R Assocs. v. City of Providence Water SupplyBd., 724 A.2d 432, 436 n. 5 (R.I. 1999) (stating that "[a]n inverse condemnation is a `[g]overnmental action short of actual acquisition . . . [which] deprives the property owner of all or most of his interest in the subject matter[]'" (quoting Brunelle v.Town of South Kingstown, 700 A.2d 1075, 1082 (R.I. 1997))). Further, "[a] paradigmatic inverse condemnation is a regulatory taking, where regulation is so onerous as to deprive the owner of most or all of the beneficial use of his or her property."Id. (citing Mesolella v. City of Providence,508 A.2d 661 (R.I. 1986)). In City of Monterey v. Del MonteDunes at Monterey, Ltd., 526 U.S. 687 (1999), [5] a property owner brought a regulatory taking claim against a city pursuant to 42 U.S.C. § 1983. The United States Supreme Court found that because the "statutory suit sounded in tort and sought legal relief, it was an action at law" under the Seventh Amendment to the United States Constitution.[6] Id. at 711. Examining whether the particular issues of liability were proper for jury determination, the United States Supreme Court stated that the issue of "whether a landowner has been deprived of all *Page 8 
economically viable use of his property is a predominantly factual question. [I]n actions at law otherwise within the purview of theSeventh Amendment, this question is for the jury."Id. at 720-21; see Annicelli, 463 A.2d at 139-40 (requiring that a property owner, claiming inverse condemnation, establish that all reasonable and beneficial use of property has been denied by enforcement of a regulation). Accordingly, this Court finds that an inverse condemnation action is an action at law analogous to a claim that would have been tried to a jury in 1843. Thus, this Court concludes that based on the available legal relief and historical treatment of such a claim, Brookenick's inverse condemnation claim must be tried before a jury.
Regarding the historical treatment of continuous trespass, this Court notes that a continuous trespass is simply a form of trespass: "According to Restatement (Second)Torts, § 158 at 277 (1965), to be liable for trespass to property, one must enter the land in the possession of another or cause something to do so, remain on the land, or fail to remove from the land a thing that he is under a duty to remove. A `continuing trespass' is defined as `[a]n unprivileged remaining on land in another's possession. . . .'" Mesolella v. City ofProvidence 508 A.2d 661, 668 n. 8 (R.I. 1986). Trespass has a traditional, legal treatment:
 Trespass is the invasion of a party's interest in the exclusive possession of his or her property. Trespass is perhaps the most fundamental of traditional legal actions, dating back to the thirteenth century. Actions for ejectment or damages for trespass are clearly legal and require a jury trial on demand. Moore's, § 38.30[1][g] at 72-73 (footnotes omitted).
See Connor v. Sullivan, 826 A.2d 953, 959 (R.I. 2003) (recognizing that "in 1843 the right to a jury trial existed for an action similar to the modern trespass and ejectment *Page 9 
action") (citing Mathewson v. Ham,21 R.I. 311, 43 A. 848 (1899)); United States v. Williams,441 F.2d 637, 644 (5th Cir. 1971) (stating that "[w]hile the Federal Rules of Civil Procedure have obviated the need for successive actions to achieve legal and equitable relief, they have not abrogated the common law right to jury consideration of legal issues, such as title to land in trespass and ejectment actions . . .").[7] Accordingly, this Court finds that based on the available relief and historical treatment of trespass claims, Brookenick's trespass claim must be tried before a jury.
Brookenick has also asserted a count sounding in substantive and procedural due process under article 1, section 2 of the Rhode Island Constitution.[8] The substantive due process portion of the count alleges that the Town's collection, discharge, and depositing *Page 10 
of trash and solid waste on the Property was not rationally related to a legitimate government interest. See East BayCmty. Dev. Corp. v. Zoning Bd. of Review of Town of Barrington,901 A.2d 1136, 1150 (R.I. 2006) (establishing that the "substantive component of due process `guards against arbitrary and capricious government action[]'" (quoting Brunelle v. Townof South Kingstown, 700 A.2d 1075, 1084 (R.I. 1997))). The procedural due process portion charges that Brookenick's property rights have been deprived without due process of law. Seeid. at 1153 (stating that "[p]rocedural due process guards against the modalities of state action, addressing itself to the task of rectifying perceived procedural deficiencies.") (citation omitted).[9]
The First Circuit has addressed a municipality's right to a jury trial in a similar context. See Perez-Serrano v.DeLeon-Velez, 868 F.2d 30 (1st Cir. 1989). InPerez-Serrano, a group of municipal employees filed an action under 42 U.S.C. § 1983 against a mayor and a municipality alleging a violation of their substantive and procedural due process rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Id. at 31.[10] The municipal employees sought declaratory relief, injunctive relief, and damages.Id. The Perez-Serrano Court stated that "`[t]here can be no doubt that § 1983 actions create tort liability with damages determined under the common law of torts.'"Id. at 32 (quoting Santiago-Negron v. Castro-Davila,865 F.2d 431 (1st Cir. 1989)). Further, the court held that "where damages and injunctive relief are sought *Page 11 
under § 1983, liability is for the jury."Id. at 32-33.[11] Though the claims asserted inPerez-Serrano were made pursuant to a statute, they resemble the state constitutional claims alleged in the case at bar. Accordingly, this Court finds that based on the legal relief sought and the historical analogy to common law torts claims, Brookenick's due process claims must be tried before a jury.
Citing Briggs Drive, Inc. v. Moorehead,103 R.I. 555, 239 A.2d 186 (1968), and In re Opinion of theJustices, 34 R.I. 191, 83 A. 3 (1912), Brookenick argues that aFud's analysis, like that conducted supra, is unnecessary because Rhode Island does not provide municipalities the right to a jury trial unless granted by statute. Further, citing those same precedents, Brookenick contends that our Supreme Court has adopted the analysis of federal courts and some state courts that due to the historical presence of sovereign immunity, no jury trial right exists in actions brought against the state or its municipalities.
This Court notes that some courts have determined that the historical existence of sovereign immunity precludes a right to a jury trial in suits against the government. In Lehman v.Nakshian, 453 U.S. 156 (1981), the United States Supreme Court considered whether a plaintiff in an action against the United States pursuant to the Age Discrimination in Employment Act (ADEA) was entitled to a jury trial under the Seventh Amendment to the United States Constitution. The United States Supreme Court explained that under common law in 1791, when the United States Constitution was adopted, no right to a jury trial existed for those asserting claims against the sovereign.Id. at 160 (citing Galloway v. United States,319 U.S. 372, 388-89 (1943)). Thus, the *Page 12 Lehman Court acknowledged that the United States "`is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Id. (quoting United States v.Testan, 424 U.S. 392, 399 (1976)). Therefore, when sovereign immunity is waived by statute, "the plaintiff has a right to a trial by jury only where that right is one of `the terms of [the Government's] consent to be sued.'" Id. (quotingTestan, 424 U.S. at 399). Following a textual analysis and an examination of the legislative history of the relevant portions of the ADEA, the United States Supreme Court held that Congress maintained its usual practice of not granting a right to a jury trial when it waived the sovereign immunity of the United States pursuant to ADEA. Id. at 168-69.
In Canning v. Lensink, 221 Conn. 346, 603 A.2d 1155 (1992), the Supreme Court of Connecticut adopted the United States Supreme Court's refusal to find a constitutional right to a jury in suits against the government. Specifically, the Canning Court declined to find the right to a jury trial in an action against a state official under the state's wrongful death statute, stating,
 We adhere to our conclusion . . . that, because the doctrine of sovereign immunity barred actions against the state prior to the adoption of the state constitution in 1818, there is no constitutional right of jury trial in civil actions based on statutes effectively waiving such immunity in particular situations. Id. at 353, 603 A.2d at 1158 (citation omitted).[12]
The Canning Court emphasized that statutes waiving sovereign immunity must affirmatively express a right to a jury trial.Id. at 354, 603 A.2d at 1159. *Page 13 
Brookenick cites Briggs Drive and In re Opinion of theJustices for the notion that because sovereign immunity existed at the time of the adoption of the Rhode Island Constitution, municipalities were not afforded the right to a jury trial.[13] Thus, Brookenick argues that a municipality is not entitled to a jury trial unless specified by legislative grant. InBriggs Drive, the issue before our Supreme Court was whether municipal taxing officials were entitled to a jury in a taxpayer's suit for review of the taxes assessed.Id. at 557, 239 A.2d at 187. The Supreme Court noted that if a right to a jury trial existed for the municipal officials, "its origins must be found either in the constitution or in some legislative enactment." Id. Rather than citing the existence of sovereign immunity at the time of the adoption of the Rhode Island Constitution, the Court offered an analysis resembling theFud's analysis, provided supra. The BriggsDrive Court explained that "[w]hen the constitution was adopted, suits for the revision of tax assessments, although cognizable in our courts, were not tried to a jury, and a taxing official cannot, therefore, claim such a right under the constitution." Id. (footnote omitted) (citations omitted). Our Supreme Court did not say that in all cases a municipality's only hope for a right to a jury trial is through a legislative grant. It offered an historical analysis of the claim at issue, a suit for relief from an alleged overassessment by the taxing officials, and determined that no constitutional right existed. In fact, our Supreme Court acknowledged that in suits to recover illegal taxes, as opposed to erroneous assessments, a jury would make factual determinations:
 [T]he taxpayer's remedies are those which the common law provides for recovery whenever a payment has been *Page 14 
illegally extracted, viz., the taxpayer may sue the municipality in assumpsit to recover what has been paid with interest; or he may treat the assessors who issued the illegal warrant as trespassers and recover from them damages to his person or property. In either of those proceedings questions of law will be for the court and of fact for the jury. Id. at 557, 239 A.2d at 187 n. 1.
After reviewing the relevant tax statutes, the Briggs Drive
Court held that the municipal taxing officials were statutorily entitled to a jury trial.Id. at 562-64, 239 A.2d at 190-91.[14]
Similar to its invocations of Briggs Drive, Brookenick argues that Ronci Mfg. Co. v. Director of Public Works,99 R.I. 723, 210 A.2d 585 (1965) establishes that the only avenue for the state's right to a jury trial is a statutory grant. InRonci Mfg., our Supreme Court considered whether the state had the right to a jury trial for the determination of *Page 15 
damages resulting from a condemnation. Like Briggs Drive,Ronci Mfg. does not stand for the proposition that the historical existence of sovereign immunity limits the state's, or a municipality's, right to a jury trial only to those legislatively bestowed. The Ronci Mfg. Court essentially adopted the constitutional analysis offered in In re Condemnation of CertainLand for New State House, 19 R.I. 326, 33 A. 448 (1895): "After a scholarly and exhaustive discussion of statutory provisions relating to condemnation proceedings as the same related to jury trials prior to the adoption of the state constitution, the court concluded there was [no constitutional necessity]." Ronci Mfg.,99 R.I. at 729, 210 A.2d at 588.[15] Finding no constitutional right to a jury trial, the Ronci Mfg. Court further held that the condemnation statute at issue did not expressly, or by implication, provide the state the right to a trial by jury.Id. at 720, 210 A.2d at 589. Thus, our Supreme Court, as it did in Briggs Drive, conducted an individualized examination of the claim at issue, assessment of damages in a condemnation case, to determine whether a constitutional right to a jury existed. Contrary to Brookenick's assertions, neither of these cases dictates that a municipality is entitled to a jury only when the General Assembly has granted statutory permission. Our Supreme Court has not adopted an analysis based on sovereign immunity like that espoused by the United States Supreme Court in Lehman,453 U.S. at 160, or the Supreme Court of Connecticut inCanning, 221 Conn. at 353, 603 A.2d at 1158. *Page 16 
Given the Town's right to a jury trial on the underlying claims, this Court must consider whether equitable relief may issue in spite of an existing jury trial right. In Egidio DiPardo Sons,Inc. v. Lauzon, 708 A.2d 165 (R.I. 1998), our Supreme Court considered the continuing viability of theSasso[16] rule of equity practice. Our Supreme Court explained:
 The Sasso rule of practice, in seeking to promote the use of a jury to resolve disputed factual issues when `[t]he rights sought to be determined and enforced are essentially legal, as distinguished from equitable rights,' . . . requires the Superior Court to submit to a jury any claims that could have been litigated in an action at law in 1843, even if the court is also asked to provide equitable relief in the first instance and then permanently after a trial. And this is so even if the entire action could have been brought before the pre-merger equity court. Id. at 172 (quoting Sasso, 98 R.I. at 490, 204 A.2d at 825).[17]
Our Supreme Court affirmed the viability of theSasso rule of equity practice after the merger of law and equity:
 This case requires us to decide whether the legislative policies, constitutional considerations, and traditional practices underlying the Sasso rule counsel its continued vitality in the context of our modern rules of civil procedure. We believe that they do and that sound practice continues to require the Superior Court to conduct a jury trial upon a timely request with respect to any underlying legal issues in a civil action which were traditionally cognizable at common law when money damages were sought even when, as here, a complaint requests substantial *Page 17 
equitable relief. By confirming the continuing viability of the Sasso rule after the merger of law and equity, we pay homage to a constitutionally influenced `policy that favors the jury trial and requires the determination of legal issues by a jury, even though certain issues in the case may be equitable,' . . . while also fostering `that complete union [of law and equity] which the new rules not only permit, but encourage.' Id. at 170 (citations omitted).
The DiPardo Court determined that the tortious and malicious interference with a contract[18] claim at issue was cognizable at law in 1843. Id. at 174-75. Accordingly, our Supreme Court held that "the Sasso rule of equity practice requires that any disputed factual issues underlying the plaintiffs' claims relating to contract interference should be decided by a jury, rather than by the court alone. . . ." Id. at 175.
The United States Supreme Court has also addressed this issue inDairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). TheDairy Queen Court explained its earlier ruling in BeaconTheatres, Inc. v. Westover, 359 U.S. 500 (1959):
 The holding in Beacon Theatres was that where both legal and equitable issues are presented in a single case, `only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' Dairy Queen, 369 U.S. at 472-73 (footnote omitted).
The Dairy Queen Court determined that whether the claim for a money judgment[19] at issue was conceived of as breach of contract action or charge of trademark infringement, it was cognizant in a court of law. Id. at 477. The Court concluded that:
 [T]he district judge erred in refusing to grant petitioner's demand for a trial by jury on the factual issues related to the question of whether there has been a breach of contract. Since these issues are common with those upon which *Page 18 
respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims. Id. at 479.
Our Supreme Court has cited with approval the analysis provided inDairy Queen. For example, in Rowell v. Kaplan,103 R.I. 60, 235 A.2d 91 (1967), our Supreme Court noted that a plaintiff who merges two claims in a single action does not affect a right to a jury trial. Id. at 68, 235 A.2d at 96 (citingDairy Queen, 369 U.S. 469). In Bendick v.Cambio, 558 A.2d 941 (R.I. 1989), our Supreme Court explained:
 In seeking to preserve the right to trial by jury in a context of mixed legal and equitable claims, we have followed a course substantially parallel to that of the United States Supreme Court in [Dairy Queen and Beacon Theatres] in expressing a policy that favors the jury trial and requires the determination of legal issues by a jury, even though certain issues in the case may be equitable. Id. at 944 (citing Rowell, 103 R.I. 60, 235 A.2d 91; Sasso, 98 R.I. 483, 204 A.2d 821).
Consistent with our Supreme Court's continued recognition of theSasso rule of equity practice and its adoption of theDairy Queen reasoning, this Court finds that since Brookenick's legal claims are common with its claims seeking equitable relief, "any disputed factual issues underlying [Brookenick's] claims . . . should be decided by a jury, rather than by the court alone. . . ." See DiPardo, 708 A.2d at 175. Upon the jury's determination as to liability and damages, this Court will consider whether equitable relief is appropriate.See Bendick, 558 A.2d at 945.
 Statutory Grant
Even assuming, arguendo, that no constitutional right to a jury trial for the Town based on the claims at issue existed, this Court finds that our General Assembly has granted the Town a statutory right to a jury trial. In Becker v. Beaudoin,106 R.I. 562, *Page 19 261 A.2d 896 (1970), our Supreme Court abrogated immunity for municipal and quasi-municipal corporations as to claims arising after June 30, 1970. Our General Assembly quickly responded to this decision:
 In response to Becker v. Beaudoin, the General Assembly enacted P.L. 1970, ch. 181, § 2, later codified as G.L. 1956 (1969 Reenactment) §§ 9-31-1 through 9-31-7, which dealt with governmental immunities. The Legislature went beyond Becker, however, and adopted sweeping language abrogating the sovereign immunity of the state as well as all other political subdivisions in Rhode Island. Laird v. Chrysler Corp., 460 A.2d 425, 428 (R.I. 1983).
Specifically, § 9-31-1 provides: "(a) The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation. . . ." Our Supreme Court has noted that § 9-31-1 "does not require a nonjury trial" in actions against the state or its municipalities. SeeLaird, 460 A.2d at 429. Our Supreme Court has found that "the broad language of § 9-31-1, which unambiguously and without restrictions holds the state `liable in all actions of tort in the same manner as a private individual or corporation [except for a limitation of damages] . . .' manifests, by `overwhelming implication,' a legislative intent to place the state in the same position as any other private litigant. . . ."Id. at 430 (parenthetical in original). The Massachusetts Supreme Judicial Court has held that treating public employers like private individuals includes ensuring a jury trial when private individuals would be entitled to one:
 The Massachusetts Tort Claims Act provides in pertinent part that `public employers shall be liable in the same manner and to the same extent as a private individual under like circumstances.' G.L. c. 258, § 2. We read this language as indicating a legislative intent that actions under *Page 20 
G.L. c. 258, § 2, are governed by the same principles that apply to actions involving private parties. . . . These principles include the right to a trial by jury. Beurklian v. Allen, 385 Mass. 1009, 1009, 432 N.E.2d 707, 707-708 (1982) (internal citation omitted).
This Court notes that the inverse condemnation, continuing trespass, and due process claims in the case at bar sound in tort in accordance with § 9-31-1. Employing the Fud's analysis applicable to private litigants to determine the Town's right to a jury trial, see supra, this Court finds that § 9-31-1 requires that the Town be entitled to a jury trial for these three claims. Even assuming, arguendo, that a constitutional right to a jury trial did not exist for the inverse condemnation, continuing trespass, and due process claims at issue, this Court finds that § 9-31-1 grants the Town a jury trial as to any disputed factual issues, liability, and damages for these claims.
 Conclusion
Brookenick's inverse condemnation, due process, and continuing trespass allegations requesting damages, in addition to equitable relief, are legal in nature and triable by jury. Accordingly, Brookenick's motion for injunctive relief is denied.
Counsel shall prepare an appropriate order.
[1] Brookenick's fifth and final count is a count for damages, claiming that Brookenick had a reasonable expectation of subdividing the Property, building houses, and selling the lots for profit.
[2] Brookenick included a fourth count seeking a preliminary and permanent injunction against the Town. Brookenick asks, interalia, that the Town "be required to test the remaining areas of Old Albion Road, file notification of testing with the DEM, file all required testing plans with the DEM, and comply with all DEM regulations in regard to the removal of waste and the remediation of Plaintiff's Property and Old Albion Road[.]" (Compl. 13.)
[3] Brookenick also seeks attorney's fees, costs, and expenses incurred in prosecuting this action.
[4] In support of its motion for injunctive relief, Brookenick relies on its likelihood of success on the merits regarding the continuous trespass claim.
[5] Our Supreme Court has "looked to the conclusions and reasoning contained in United States Supreme Court decisions to inform our own right-to-a-jury-trial jurisprudence. . . ." Fud's, 727 A.2d at 696 (citations omitted).
[6] The Seventh Amendment provides in part that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." The United States Supreme Court's framework for determining the right to a jury trial under the Seventh Amendment resembles the test established by our Supreme Court relating to article 1, section 15 of the Rhode Island Constitution. SeeFud's, 727 A.2d at 695. The United States Supreme Court explains its analysis as follows:
 `[W]e ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was.' . . . `If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.' Del Monte Dunes, 526 U.S. at 708 (quoting Markman v. Westview Instruments, Inc., 517 U.S. 370, 376 (1996)).
[7] In Whipple v. Marwell, 198 A. 565 (R.I. 1938), our Supreme Court discussed a jury's permitted factual findings in an action of trespass to recover damages:
 That the defendant by his agents and servants, acting by his instructions, entered, without permission from the plaintiff, certain land . . . included in the tract described in the declaration as the plaintiff's close, and removed from that land large quantities of gravel; that the plaintiff was then the owner and in possession of that land; and that the defendant has never paid the plaintiff for the damage thus caused to the latter. Id. at 566.
[8] This Court notes that in order to recognize these due process claims emanating from the text of the Rhode Island Constitution, article 1, section 2's due process provision must be self-executing.See Bandoni v. State, 715 A.2d 580, 586 (R.I. 1998) (asking whether a constitutional provision supplies "`a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed be enforced . . . [or does] it merely indicate[] principles, without laying down rules by means of which those principles may be given the force of law[?]'" (quotingDavis v. Burke, 179 U.S. 399, 403 (1900)) (parentheticals in original); A.F. Lusi Constr., Inc. v. RhodeIsland Convention Ctr. Auth., 934 A.2d 791, 797-98 (R.I. 2007). Our Supreme Court has noted that a "necessary precondition" to a constitutional challenge of a statute is that the constitutional provision allegedly violated is self-executing. Smiler v.Napolitano, 911 A.2d 1035, 1039 n. 5 (R.I. 2006) (establishing that article 1, section 5 of the Rhode Island Constitution is not self-executing). Though not explicitly acknowledging that article 1, section 2's due process provision is self-executing, our Supreme Court has considered both substantive and procedural due process challenges to Rhode Island statutes. Seee.g., Cherenzia v. Lynch, 847 A.2d 818, 826 (R.I. 2004) (finding that a substantive due process challenge under article 1, section 2 of the Rhode Island Constitution failed because statute at issue was reasonably related to the legitimate conservation of Rhode Island shellfish resources and the interests of greater boating safety); GEM Plumbing Heating Co.,Inc. v. Rossi, 867 A.2d 796, 818 (R.I. 2005) (finding that Mechanics' Lien Law did not violate procedural due process under article 1, section 2 of the Rhode Island Constitution). Noting that the self-executing nature of the due process provision of article 1, section 2 is a "necessary precondition" for these types of challenges, this Court, based on that self-executing quality, recognizes the due process claims for damages, declaratory relief, and injunctive relief asserted in the case at bar.
[9] This Court notes that article 1, section 2's due process provision, which provides that "[n]o person shall be deprived of life, liberty or property without due process of law[,]" was not included in the Rhode Island Constitution until 1986. SeeJones v. State of Rhode Island,724 F.Supp. 25, 34-35 (D.R.I. 1989).
[10] The municipal employees also alleged substantive and procedural due process violations under Puerto Rico personnel statutes; however, the First Circuit explicitly did not address these claims. Perez-Serrano, 868 F.2d at 33.
[11] The Perez-Serrano Court ruled only that liability was for the jury because the district court had ordered that a jury would determine damages. Id. at 32.
[12] See also Unisys Corp. v. South Carolina Budget andControl Bd. Div. of General Services Information TechnologyManagement Office,346 S.C. 158, 172, 551 S.E.2d 263, 271 (2001) (stating that "[a]t the time our constitution was adopted in 1868, the State was immune from suit on a contract. . . . Accordingly, art. I, § 14 [of the South Carolina Constitution], does not guarantee the right to a jury trial on a contract with the State[]").
[13] Our Supreme Court has established that municipalities possessed sovereign immunity protection under the common law: "Historically, under the common law, the state, as well as a municipality, enjoyed sovereign immunity, which could be waived only by the state's deliberate and explicit waiver." Graff v.Motta, 695 A.2d 486, 489 (R.I. 1997) (citing Mulvaney v.Napolitano, 671 A.2d 312, 312 (R.I. 1995)).
[14] Brookenick has cited In re Opinion of the Justices,34 R.I. 191, 83 A. 3 (1912) in tandem with Briggs Drive to argue that sovereign immunity precludes a constitutional right to trial by jury for the Town. The extent of the analysis in In reOpinion of the Justices on the issue of whether two sections of the General Laws of 1909 that imposed financial assessments on several Rhode Island cities and towns violated article 1, section 15 of the Rhode Island Constitution is found in the following paragraph:
 In the sections under consideration, there is nothing to indicate any abuse of legislative discretion in the premises. Neither are the provisions of the sections in conflict with the Constitution of the state, art. 1, § 15, which reads as follows: `The right of trial by jury shall remain inviolate.' As this court decided in Bishop v. Tripp, 15 R. I. at page 469, 8 Atl. 694: `The plaintiff also contends that the statutes authorizing the [sewer] assessments are void, because they do not give the assessed the right of appeal, with trial by jury, and are therefore in conflict with the Constitution of the state, art. 1, § 15, which declares that the right of trial by jury shall remain inviolate. Assessments for benefits have always been regarded in this state, and, so far as we know, in other states, as a species of taxation; and, though tax assessments were before, and have been since, the adoption of the Constitution subject to revision in the courts, they have never, to our knowledge, been subject to revision by jury trial. Crandall v. James, 6 R. I. 144. Therefore we do not think the statutes are obnoxious to this objection. The Constitution requires simply the conservation, not an extension, of the right of jury trial.' In re Opinion of the Justices, 34 R.I. at 197-98, 83 A. at 6 (R.I. 1912).
Noting that In re Opinion of the Justices makes no mention of sovereign immunity, this case, like Briggs Drive, fails to support Brookenick's argument.
[15] After a review of condemnation proceedings prior to the adoption of the Rhode Island Constitution, our Supreme Court inIn re Condemnation of Certain Land for New State House
concluded:
 It is apparent that for 40 years, at least, prior to the adoption of the constitution, the party in whose favor the power of condemnation was exercised was not uniformly granted the right of trial by jury; and this seems to us to be conclusive that there is no constitutional necessity requiring such party to have a jury trial. In re Condemnation of Certain Land for New State House, 19 R.I. at 336, 33 A. at 452.
[16] Maryland Cas. Co. v. Sasso,98 R.I. 483, 204 A.2d 821 (1964).
[17] Rhode Island's law and equity courts merged in 1965.See Filippi v. Filippi,818 A.2d 608, 629 n. 10 (R.I. 2003) (citing P.L. 1965, ch. 55, § 28). Under the Superior Court Rules of Civil Procedure,
 law and equity are united; the splitting of a cause into two actions, one for legal and the other for equitable relief is prohibited; the fusion of all claims, whether legal or equitable, or even both, into a single action is required; and the right to obtain all of the relief to which a party may be entitled in a single action is made possible. Rowell v. Kaplan, 103 R.I. 60, 67, 235 A.2d 91, 95 (1967).
[18] The plaintiffs sought injunctive relief and damages.DiPardo, 708 A.2d at 168.
[19] The complaint also prayed for temporary and permanent injunctions. Dairy Queen, 369 U.S. at 475.